Khodadad D. Sharif, State Bar No. 187992
Matthew J. Faust, State Bar No. 254145
Yasaman Sharif, State Bar No. 298318
SHARIF | FAUST LAWYERS, LTD.
600 B Street, Suite 2490
San Diego, CA  92101
Telephone:  (619) 233-6600
Facsimile:   (619) 233-6602

Attorneys for Plaintiffs
Marcos Rodriguez and Jorge Rodriguez

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCOS ANTONIO RODRIGUEZ, an individual, JORGE LUIS RODRIGUEZ, an individual | Case No.:  **'22CV581  BEN DEB** |
| | COMPLAINT |
| Plaintiffs, | |
| vs. | DEMAND FOR JURY TRIAL |
| T-MOBILE USA, INC. a Delaware Corporation, COINBASE, INC., a Delaware Corporation, and DOES 1 through 20, | |
| Defendants. | |

**COMES NOW**, PLAINTIFFS MARCOS ANTONIO RODRIGUEZ and JORGE

LUIS RODRIGUEZ who bring this action against DEFENDANTS T-MOBILE USA, INC.,

a Delaware Corporation, COINBASE, INC., a Delaware Corporation, and DOES 1 through

20 and allege as follows:

/ / /

## PARTIES

1)      PLAINTIFF MARCOS ANTONIO RODRIGUEZ ("Plaintiff" or "Plaintiff Marcos" or "Marcos") is an individual who at all relevant times was, and currently is, a resident of San Diego, the State of California.

2)      PLAINTIFF JORGE LUIS RODRIGUEZ ("Plaintiff" or "Plaintiff Jorge" or "Jorge") is an individual who at all relevant times was, and currently is, a resident of San Diego, the State of California.

3)      Plaintiffs Marcos and Jorge shall be collectively referred to as "Plaintiffs."

4)      Upon information and belief, Defendant T-Mobile USA, Inc. ("T-Mobile") is a corporation incorporated in the State of Delaware registered to do business in the State of California. Its headquarters and principal place of business is in Bellevue, Washington.

5)      Upon information and belief, Defendant Coinbase, Inc. ("Coinbase") is a corporation incorporated in the State of Delaware registered to do business in the State of California.

6)      The true names and capacities of those persons named herein as DOES 1 through 20, inclusive, are presently unknown to Plaintiffs. DOES 1 through 20 are the hackers and thieves who, as will be alleged in detail herein, conducted unauthorized SIM swap, attempted to and/or accessed Plaintiffs' accounts with T-Mobile and Coinbase, and ultimately stole funds from Marcos' Coinbase account. These hackers/thieves, DOES 1 through 20, will be referred to as "Hackers," "Hacker Defendants," "DOES Defendants" or

"DOES 1 through 20." Plaintiffs are informed and believe, and thereon allege, that some or all of DOES 1 through 20 were employees of T-Mobile and Coinbase, who were acting within the scope of their employment at all times alleged herein.

7)   Plaintiffs are informed and believe, and thereon allege, that Defendants knowingly and intentionally participated in a conspiracy and scheme to steal Plaintiffs' personal and confidential information and to hide, steal, and deprive Plaintiffs of their property and money. During the course of the conspiracy, Defendants intentionally and knowingly undertook unlawful and unauthorized acts to steal Plaintiffs' personal and confidential information and to hide, steal, and deprive Plaintiffs of their property and money. During the course of the conspiracy, Defendants, including but not limited to, Defendants DOES 1 through 20, intentionally and knowingly conspired and assisted each other (other co-conspirators).

8)   At all times mentioned in this Complaint, each Defendant DOES 1 through 20 was the agent/employee of each and every other Defendant. In doing the acts alleged herein, each and every Defendant DOES 1 through 20 was acting within the course and scope of this agency and employment and was acting with the consent, permission, and authorization of each of the other Defendants. All actions of each DOES 1 through 20 alleged in the Complaint were ratified and approved by the officers, directors, or managing agents of every other entity Defendant.

9)   Defendants, including but not limited to DOES 1 through 20, furthered the

conspiracy by cooperation with, lending aid and encouragement to, and/or ratifying and adopting the acts of the other Defendants and/or Defendants DOES 1 through 20. The last overt act in pursuance of this conspiracy occurred within the year of the filing of the Complaint. Defendants, and each of them, conspired to hide the true nature of the dealings and misconduct from Plaintiffs and successfully did so until Plaintiffs were substantially harmed.

## JURISDICTION AND VENUE

10)     This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because this case arises under federal question jurisdiction under the Federal Communications Act ("FCA"). The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims because all of the state law claims are derived from a common nucleus of operative facts and incidents. The Court also has jurisdiction over this matter under 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000 and Plaintiffs and Defendants are citizens of different states. This Court also has jurisdiction over this matter, to the extent it involves Plaintiffs and T-Mobile, under 47 U.S.C. § 207, as T-Mobile is a "common carrier" as that term is defined under the Act.

11)     This Court has personal jurisdiction over all Defendants. T-Mobile and Coinbase are registered to conduct business in this District and have places of business, stores, bank accounts, and employees in this District. T-Mobile and Coinbase engage in business with consumers in this District. T-Mobile and Coinbase operate websites accessible

in this District aimed at attracting consumers in this District. T-Mobile and Coinbase advertise and market their services in this District, specifically targeting the consumers in this District. Furthermore, the Court has personal jurisdiction over all Defendants because the complained acts and misconduct all occurred and were committed by Defendants in this District, Defendants' acts and misconduct were specifically and purposefully directed and targeted at Plaintiffs, and Plaintiffs suffered harm in this District as a result of Defendants' acts and misconduct in this District. Ultimately, Plaintiff Marcos lost a substantial amount of funds in this District. Additionally, as to the hacker Defendants, the Court has personal jurisdiction over them because they specifically and purposefully targeted the residents of this District, the Plaintiffs, and the harm was felt by Plaintiffs in this District. As it will be detailed below, although the Hacker Defendants used a variety of fake IP addresses from different states to access Plaintiffs' confidential information and accounts with Coinbase and T-Mobile, upon information and belief such IP addresses were fake, and Hacker Defendants were in this District.

12)    Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events, omissions, actions, and conduct giving rise to Plaintiffs' claims in this lawsuit occurred in this District. Plaintiffs obtained their T-Mobile mobile plan and Plaintiff Marcos subscribed for Coinbase plan in this District. Plaintiffs reside in this District and Defendants' acts and omissions causing substantial harm to Plaintiffs occurred in this District. Plaintiffs' personal and confidential information was compromised in this District.

Plaintiff Marcos lost a substantial amount of funds in this District.

## **NATURE OF THE ACTION**

13)     This action arises from T-Mobile's and Coinbase's failure to provide the proper services advertised to, and to protect the privacy and sensitive confidential data of, their customers, Plaintiffs. As a result of Defendants' misconduct, misrepresentations, and omissions, Plaintiffs' sensitive personal and proprietary information and financial information were compromised. As a direct result of Defendants' misconduct, misrepresentations, and omissions, Plaintiff Marcos lost the approximate sum of $188,345.00 to the Hackers. Nearly $6,140 of this sum consists of the fees charged by Coinbase for the unlawful transactions conducted by the Hackers.

14)     T-Mobile is one of the largest wireless service providers in this country. It provides services to millions of Americans. T-Mobile advertises, represents, and promises on its website and in all its sales and marketing materials that it takes security measurements to protect its customers' identity and confidential information.  As a result of T-Mobile's false and/or misleading sales and marketing materials and its failure to abide by its promises and representations to safeguard its customers' sensitive and confidential personal and proprietary information, Plaintiffs suffered from T-Mobile's data breach in August 2021 where Plaintiffs' confidential personal and proprietary information was compromised.  As a result of T-Mobile's false and/or misleading sales and marketing materials and its failure to abide by its promises and representations to safeguard its customers' personal and

proprietary information, an unauthorized SIM swap was conducted on Marcos' mobile device in November 2021 which allowed Hackers to access and obtain control over Marcos' T-Mobile cell phone number and his accounts, including, but not limited to, Marcos' Coinbase account where he stored his cryptocurrencies. T-Mobile's misconduct, misrepresentations, and omissions were a substantial factor in causing significant financial harm to Plaintiffs.

15)   Coinbase is one of the largest online cryptocurrency exchange platforms for buying, selling, transferring, and storing cryptocurrency. It provides services to millions of people around the world, including millions in this country. Coinbase advertises, represents, and promises on its website and in all its sales and marketing materials that it is the safest and most secure platform for cryptocurrency exchange. As a result of Coinbase's false and/or misleading marketing and sales material and its failure to abide by its promises and representations to keep the platform safe and secure and safeguard its users' sensitive and confidential personal and financial information, Hackers accessed Marcos's Coinbase account from a variety of fake IP addresses, causing extensive damage to Marcos. Despite Marcos' immediate and prompt reporting of the unlawful activities to Coinbase, it failed to take any prompt actions to assist Marcos; Coinbase's nonresponsiveness and failure to take any prompt action closed all avenues to impede the Hackers from finalizing their scheme. Plaintiff Marcos lost his cryptocurrencies. Coinbase's actions, misrepresentations, and omissions were a substantial factor in causing significant financial harm to Marcos.

# FACTUAL BACKGROUND

**A. Before Plaintiffs Joined Them, Both T-Mobile and Coinbase Knew About the Shortcomings of Their Safeguards, Given the Cyber Data Breaches and SIM Swap Scams from Which Their Customers Had Suffered.**

16) As will be detailed below, Plaintiffs have suffered gravely due to T-Mobile's and Coinbase's intentional misconduct and omissions. Before Plaintiffs contemplated joining T-Mobile and Coinbase, both companies knew of the shortcomings of their safeguards and privacy and security procedures. Before Plaintiffs joined T-Mobile and Coinbase, as both companies knew, and had been reported by government regulators of various agencies, including, but not limited to, the Federal Trade Commission ("FTC") and Federal Communications Commission ("FCC"), hackers had been involved in data breaches and were increasingly using a variety of schemes, such as "SIM swap" scam, to access and obtain customer personal and financial information in order to take control over customers' financial accounts and effectuate fraudulent transactions.

17) As early as June 7, 2016, the FTC warned about the damaging and pervasive "SIM swap" scam and cell phones being hijacked by identity thieves with the results of emptying the victims' bank accounts.[1] As this article available on the FTC website, and countless other similar available resources describe, a "SIM swap" refers to a relatively simple scheme, wherein third-party hackers take control of a victim's cell phone number. The hackers then use that phone number as a key to access and take over the victim's online

---

[1] "Your mobile phone account could be hijacked by an identity thief," *FTC.gov*, Jun. 7, 2016, available at https://www.ftc.gov/news-events/blogs/techftc/2016/06/your-mobile-phone-account-could-be-hijacked-identity-thief

accounts, such as emails, file storage, and financial accounts, and to effectuate fraudulent transactions.

18)    Most cell phones, including the one owned by Marcos at the time of the SIM swap, have an internal SIM ("subscriber identity module") card. A SIM card is a small, removable chip that allows a cell phone to communicate with the mobile carrier's network and the carrier to know what subscriber account is associated with that mobile phone. The connection between the cell phone and the SIM card is made though the mobile carrier, which associates each SIM card with the physical phone's IMEI ("international mobile equipment identity"), which is akin to the cell phone's serial number. Without an activated SIM card and effective SI connection, a cell phone cannot send or receive any calls or text messages over the mobile carrier network. SIM cards can also store an amount of account data, including, but not limited to, contacts, text messages, and carrier information, and that data can help identify the subscriber.

19)    A hacker can take control of a victim's cell phone number when a new SIM card associated with the victim's cell phone is issued to, and activated with the victim's phone number in, the hacker's cell phone. This allows the hacker's cell phone to effectively mirror the victim's cell phone, at which point the victim's cell phone with the original SIM card stops working. This is known as a "SIM Swap" scam.

20)    During a "SIM Swap" scam, hackers acquire the victim's publicly available information, or information acquired through other method such as data breaches. Then, the

hackers contact the wireless service provider, such as T-Mobile, and while impersonating the victim, they report that their/the victim's phone has been damaged or stolen. The hackers convince the mobile carrier, such as T-Mobile, to cancel the SIM card (in the victim's cell phone) and activate a new SIM card with the victim's phone number in the hackers' phone. After the mobile carrier complies with the hackers' request, the hackers take control over the victim's cell phone, mobile account, and confidential personal and proprietary information and are able to access the victim's bank accounts, respond to phone calls and text messages directed to the victim's cell phone number in order to accomplish their own criminal activities, as though they are the victim. Through this, the hackers successfully access the victim's bank accounts and transfer funds outside of the victim's accounts to unknown accounts. At the time the SIM swap is conducted, the victim's phone also stops working and it may take hours or even days for the victim's phone services to be restored.

21)    As further described and acknowledged by the FTC in the article posted on June 7, 2016, "The mobile carriers are in a better position than their customers to prevent identity theft through mobile account hijacking and fraudulent new accounts . . . . Carriers should adopt a multi-level approach to authenticating both existing and new customers and require their own employees as well as third-party retailers to use it for all transactions."

22)    Notably, T-Mobile has admitted to several cyber data breaches—and SIM swap attacks—since 2018, including, but not limited to, the following:[2]

---

2 "T-Mobile says new data breach caused by SIM swap attacks," *Bleepingcomputer.com*, Dec. 29, 2021, available at https://www.bleepingcomputer.com/news/security/t-mobile-says-new-data-breach-caused-by-sim-swap-attacks/

a)  In or about August 2018, hackers accessed T-Mobile's customers' sensitive personal information.

b)  In or about November 2019, T-Mobile exposed its customers' personal data.

c)  In or about December 2020, hackers accessed T-Mobile's exposed customer proprietary network information (including phone numbers, call records).

d)  In or about February 2021, hackers targeted nearly 400 T-Mobile customers in SIM swap attacks after gaining access to an internal T-Mobile application.

e)  In or about August 2021, hackers exfiltrated and stole records belonging to nearly 54.6 million T-Mobile's customers, containing their personal information (Social Security numbers, phone numbers, addresses, dates of birth, T-Mobile prepaid PINs, and government issued identification card information.)

23)  Coinbase has similarly suffered cyber data breaches in the past few years. For instance, in or about October 2021, Coinbase admitted that its shortcomings in its security measurements had led to the compromise of thousands of its users accounts between March and May 20, 2021.[3] As early as on or about March 26, 2021, there were news articles out on internet regarding Coinbase users whose accounts had been hacked and drained "[w]ithin a couple of minutes."[4] There are hundreds, if not thousands, of complaints brought by

---

3 Cryptocurrency funds removed from 6,000 Coinbase accounts due to a flaw in SMS authentication, *The Daily Swig Cybersecurity News and Views*, Oct. 4, 2021, available at https://portswigger.net/daily-swig/cryptocurrency-funds-removed-from-6-000-coinbase-accounts-due-to-flaw-in-sms-authentication

4 Crypto case under attack, *Protocol*, Mar. 26, 2021, available at https://www.protocol.com/newsletters/protocol-fintech/cash-app-coinbase-hacks?rebelltitem=1#rebelltitem1

Coinbase's customers, with government agencies, due to harms suffered by the customers as a result of Coinbase's shortcomings in its security measurements.

24)     As it will be detailed herein, Plaintiffs were victimized by unauthorized access to their customer personal and financial information. Marcos suffered great financial harm due to the data breaches and an unauthorized SIM swap.

**B. After Reasonably Relying on False and Misleading Advertisements, Representations, and Promises Made by T-Mobile, Jorge Joined T-Mobile.**

25)     In or about May 2018, Jorge noticed T-Mobile's advertisement for a low-price plan. At the time Jorge was considering joining T-Mobile, it was crucial to him that the wireless service provider would have adequate safety and security procedures in place to ensure the confidentiality and privacy of Jorge's sensitive and confidential personal and financial information. Thus, at further inspection of T-Mobile's marketing and sales material, Jorge reviewed its Privacy Policy where T-Mobile made the following, or substantially similar, representations and promises:

a)     "We use administrative, technical, contractual, and physical safeguards designed to protect your data while it is under our control. For example, when you contact us by phone or visit us in our stores, we have procedures in place to make sure that only the primary account holder or authorized users have access."

b)     "We may disclose personal data about you to third parties with your consent,

which we may get in writing, online, or orally. We may also share your personal data with third parties when you tell us to or when you use our products or services to interact with third parties, whose separate privacy notices may apply to that data."[5]

26) The terms of the Privacy Policy, and more specifically the terms identified herein, have remained similar since 2018.

27) At the time T-Mobile lured Jorge to purchase its plan, T-Mobile's sales and marketing materials stated that unless T-Mobile can verify the person's identity who contacts T-Mobile that T-Mobile's policy is not to release any account or personal information.

28) At the time T-Mobile presented its sales and marketing materials to Jorge and lured Jorge to purchase its plan by presenting the false and/or misleading representations and promises on its website, and thereafter, T-Mobile knew or should have known such statements and representations were false and/or misleading as follows:

a) T-Mobile knew or should have known that in light of the industrywide SIM swap scam and data breaches, that it had no adequate or proper policies or safety measures in place to prevent such criminal cyber activities from taking place. T-Mobile knew or should have known that in light of the industrywide SIM swap scam, it was neither safe nor secure;

b) T-Mobile knew or should have known that in light of the industrywide SIM

---

5 "When We Share Personal Data About You," *T-Mobile Privacy Notice*, Effective May 5, 2021, available at https://www.t-mobile.com/privacy-center/our-practices/privacy-policy#section5

swap scam and data breaches, when a person contacted them by phone or visited them in their stores, T-Mobile did not have adequate or proper procedures in place to make sure that only the primary account holder or authorized users would have access;

c)   T-Mobile knew or should have known that in light of the industrywide SIM swap scam and data breaches, that it would not be able to prevent disclosure of personal and proprietary data about its customers to third parties, such as hackers/thieves, without its customers'/Jorge's consent;

d)   T-Mobile knew or should have known that its employees were not fitted nor trained properly to prevent unauthorized access to its customers' accounts;

e)   T-Mobile knew or should have known that its employees were not trained properly to assist users and prevent harm/or further harm when customers report fraudulent activities; and

f)   T-Mobile knew or should have known that it did not have the proper and adequate procedures in place to promptly detect unauthorized access or attempts to access customers' accounts and criminal and fraudulent activities by its own employees or others.

29)   These were misrepresentations of material facts to Jorge. T-Mobile intentionally failed to, and omitted to, apprise Jorge of the preceding material facts at the time Jorge was contemplating joining T-Mobile.

30)     Despite its knowledge, as identified herein, T-Mobile intentionally and knowingly made false and/or misleading representations and promises on its website with the goal of luring customers/Jorge to join T-Mobile and secure Jorge's business.

31)     Jorge reasonably relied on the representations and promises made by T-Mobile, believing that T-Mobile undertook all necessary actions and had proper and adequate safety and security measures in place to ensure the confidentiality of Jorge's sensitive and confidential personal and financial information. After reasonably relying upon the representations and promises made by T-Mobile, Jorge subscribed in or about 2018. Jorge reasonably believed that his sensitive and confidential personal and financial information would be safe, and that T-Mobile would undertake all necessary actions to ensure the safety of his information and to protect his him from cyber hackers and thieves.

32)     Had it not been for the false and/or misleading advertisements, representations, and promises made by T-Mobile on its website and also as part of its Privacy Policy, Jorge would never have joined T-Mobile and would never have shared with T-Mobile, his confidential personal and financial information, including, but not limited to, Jorge's full name, driver's license number, social security number, personal email address, physical address, and bank information.

**C. After Reasonably Relying on False and Misleading Advertising Representations and Promises Made by T-Mobile, Marcos Joined T-Mobile.**

33)     In or about April 2019, Marcos was searching for a new wireless service provider that would be safe and secure. Given Jorge's experience with T-Mobile was

positive at the time, Marcos considered T-Mobile as an option.

34)     At the time Marcos was considering joining T-Mobile in or about April 2019, it was crucial to him, as it was to his father Jorge, that the wireless service provider would have adequate safety and security procedures in place to ensure the confidentiality and privacy of Marcos' sensitive and confidential personal and financial information. Thus, in or about April 2019, at further inspection of T-Mobile's marketing and sales material, Marcos reviewed its Privacy Policy where T-Mobile made the following, or substantially similar, representations and promises:

35)     Under its Privacy Policy available on its website, T-Mobile made the following representations and promises in or about April 2019 at the time Jorge was searching for a new wireless service provider:

a)     "We use administrative, technical, contractual, and physical safeguards designed to protect your data while it is under our control. For example, when you contact us by phone or visit us in our stores, we have procedures in place to make sure that only the primary account holder or authorized users have access."

b)     "We may disclose personal data about you to third parties with your consent, which we may get in writing, online, or orally. We may also share your personal data with third parties when you tell us to or when you use our products or services to interact with third parties, whose separate privacy

notices may apply to that data."[6]

36)    The terms of the Privacy Policy, and more specifically the terms identified herein, have remained similar since 2018.

37)    At the time T-Mobile lured Marcos to join, T-Mobile's sales and marketing materials stated that unless T-Mobile can verify the person's identity who contacts T-Mobile that T-Mobile's policy is not to release any account or personal information.

38)    At the time T-Mobile presented its sales and marketing material to Marcos and lured Marcos to join it by presenting the false and/or misleading advertising representations and promises on its website, and thereafter, T-Mobile knew or should have known such statements were false and/or misleading as follows:

a)    T-Mobile knew or should have known that in light of the industrywide SIM swap scam and data breaches, that it had no proper or adequate policies or safety measures in place to prevent such criminal cyber activities from taking place. T-Mobile knew or should have known that in light of the industrywide SIM swap scam and data breaches, it was not safe or secure;

b)    T-Mobile knew or should have known that in light of the industrywide SIM swap scam and data breaches, when a person contacted them by phone or visited them in their stores, T-Mobile did not have proper or adequate procedures in place to make sure that only the primary account holder or

---

6 "When We Share Personal Data About You," T-Mobile Privacy Notice, Effective May 5, 2021, https://www.t-mobile.com/privacy-center/our-practices/privacy-policy#section5

authorized users would have access;

c) T-Mobile knew or should have known that in light of the industrywide SIM swap scam and data breaches, that it would not be able to prevent disclosure of personal and proprietary data about its customers to third parties, such as hackers/thieves, without its customers'/Marcos' consent;

d) T-Mobile knew or should have known that in lights of the SIM swap scams and data breaches from which T-Mobile had failed to protect its customers, that it would not be able to protect the privacy of its future customers' personal and proprietary information, such as Marcos, from unauthorized access;

e) T-Mobile knew or should have known that its employees were not fitted nor trained properly to prevent unauthorized access to its customers' accounts;

f) T-Mobile knew or should have known that its employees were not trained properly to assist users and prevent harm/or further harm when customers report fraudulent activities; and

g) T-Mobile knew or should have known that it did not have the proper and adequate procedures in place to promptly detect unauthorized access or attempts to access customers' accounts and criminal and fraudulent activities of its own employees and others.

39) These were misrepresentations of material facts to Marcos. T-Mobile intentionally failed to, and omitted to, apprise Marcos of the preceding material facts at the

time Marcos was contemplating joining T-Mobile.

40)   Despite its knowledge, as identified in the preceding paragraph, T-Mobile intentionally and knowingly made false and/or misleading representations and promises on its website with the goal of luring customers/Marcos to join T-Mobile and secure Marcos' business.

41)   Marcos reasonably relied on the representations and promises made by T-Mobile, believing that T-Mobile undertook all necessary actions and had all adequate safety and security measures in place to ensure the confidentiality of Marcos' sensitive and confidential personal and financial information. After reasonably relying upon the representations and promises made by T-Mobile, Marcos subscribed in or about April 2019, and became a subscriber by having his father Jorge adding Marcos to the account that was under Jorge's name. Marcos reasonably believed that his sensitive and confidential personal and financial information would be safe, and that T-Mobile would undertake all necessary actions to ensure the safety of his information and to protect him from cyber hackers and thieves.

42)   At the time Marcos was considering joining T-Mobile, he had no reason to suspect the truth of T-Mobile's representations and promises, and he reasonably relied on such representations and promises, as Jorge's experience with T-Mobile was positive at the time. Both Jorge and Marcos were under the impression that Jorge's sensitive and confidential information had remained secure and protected.

43)    Had it not been for the false and/or misleading advertisements, representations, and promises made by T-Mobile on its website and as part of its Privacy Policy, Marcos would never have joined T-Mobile and allow T-Mobile to obtain Marcos' confidential personal information.

44)    Both Jorge and Marcos remained subscribers and continued using T-Mobile's services as T-Mobile continued to make false and/or misleading statements, both oral and written, to Jorge and Marcos, representing that they should "trust [T-Mobile] with [their] information, and [T-Mobile] work[s] hard to keep it secure" or that T-Mobile is "[d]esigned to help secure your data and privacy." In the written communications received from T-Mobile as well as the oral representations made by its employees and agents, in the past few years, T-Mobile has constantly represented to Jorge and Marcos that their sensitive personal and financial information is safe and secure, and that T-Mobile takes all necessary measurements to ensure the safety of such information.

45)    As it will be detailed below, T-Mobile's false and/or misleading advertisements, representations, and promises were a substantial factor in causing significant financial harm to Marcos.

**D. After Reasonably Relying on False and Misleading Advertisements, Representations, and Promises Made by Coinbase, Marcos Joined Coinbase.**

46)    Marcos and his father, Jorge, are investors who own multiple businesses. In or about April 2021, Marcos decided to join the cryptocurrency world, and, as such, began searching for a reliable online platform to store his funds and conduct cryptocurrency-related

transactions safely. It was crucial to Marcos to ensure that the online platform would be safe and secure. At the time Marcos was searching for a safe and secure online platform, he reviewed Coinbase and saw its sales and marketing materials and read the representations and promises made on its website, including, but not limited to, the following, in or about April 2021:

a)    Coinbase holds itself on the internet as "The Safest Place for Crypto." It also holds itself as "the Safest, Most Secure Place to Buy and Sell Bitcoin, Ethereum, and More. We're obsessed with Security So You Don't Have to Be. Buy, Sell, and Trade Crypto Safely."



b)    On its website Coinbase states, "Buy, sell, and manage your crypto on the world's most trusted crypto exchange." [7] It also states on its website that it has tens of millions of verified users. [8]

---

[7] Coinbase, available at https://www.coinbase.com/
[8] "About Coinbase," *Coinbase*, available at https://www.coinbase.com/about

47)   Coinbase's sales and marketing materials on its website as well as the representations, and promises made by Coinbase on its website, including those described herein, have remained similar since April 2021 when Marcos saw the advertisements, and the representations and promises were made to him.

48)   At the time Coinbase lured Marcos to join by presenting the false and/or misleading representations and promises to him on its website, and thereafter, Coinbase knew or should have known such statements, representations, and promises were false and/or misleading as follows:

a)   Coinbase knew or should have known that its platform was not the safest place for cryptocurrency, that it was not obsessed with security, that it was not the platform to buy, sell, and trade cryptocurrency safely;

b)   Coinbase knew or should have known that in light of the industrywide SIM swap scam and data breaches aimed at emptying investors' financial accounts, that it had no proper or adequate policies or safety measures in place to prevent such criminal cyber activities from taking place on its platform. Coinbase knew

or should have known that in light of the industrywide SIM swap scam and data breaches, it was neither safer nor more secure than the other competing online platforms;

c)   Coinbase knew or should have known that in light of the industrywide SIM swap scam and data breaches aimed at emptying investors' financial accounts, that it had no proper or adequate procedures in place that would allow it to detect hackers/thieves attempting to access investors' accounts, such as Marcos, and stealing the cryptocurrency available in such accounts;

d)   Coinbase knew about the ongoing data breach between March and May 2021 which led to great financial loss for thousands of its users;

e)   Coinbase knew or should have known that its employees were not fitted nor trained properly to prevent unauthorized access to its users' accounts;

f)   Coinbase knew or should have known that its employees were not trained properly to assist users and prevent harm/or further harm when users report fraudulent activities; and

g)   Coinbase knew or should have known that it did not have the proper and adequate procedures in place to promptly detect unauthorized access or attempts to access users' accounts and criminal and fraudulent activities by its own employees and others.

49)   These were misrepresentations of material facts to Plaintiff Marcos. Coinbase

intentionally failed to, and omitted to, apprise Marcos of the preceding material facts at the time Marcos was contemplating joining Coinbase.

50)     Despite its knowledge of its shortcomings and safety and privacy issues, as identified herein, Coinbase intentionally and knowingly made false and/or misleading representations and promises on its website with the goal of luring investors/Marcos to join Coinbase.

51)     Marcos reasonably relied on the advertisements, representations, and promises made by Coinbase, believing that it was the most secure and safest online platform for buying, selling, transferring, and storing cryptocurrency, and that Coinbase had properly-trained and fitted employees in its customer service who would assist Marcos promptly and adequately in the event an issue ever arose. After reasonably relying upon the representations and promises made by Coinbase, Marcos subscribed and joined the online platform on or about April 16, 2021. Marcos reasonably believed that his sensitive and confidential personal and financial information would be safe and that Coinbase would take all necessary actions to ensure the safety of Marcos' information and to protect his cryptocurrency from cyber hackers and thieves.

52)     Had it not been for the false and/or misleading advertisements, representations, and promises made by Coinbase on its website, Marcos would never have joined Coinbase. Had Marcos known that Coinbase's employees were unfit and not properly trained to assist him promptly and properly in the event an issue arose—such crucial piece of information

was never disclosed to him—he would never have joined Coinbase.

53)     As it will be detailed below, Coinbase's false and/or misleading advertisements, representations, and promises, and its failure to take any prompt action upon receiving prompt reports from Marcos regarding the unlawful transactions/activities in his Coinbase account, were a substantial factor in causing significant financial harm to Marcos.

**E. Plaintiffs were victims of T-Mobile Data Breach in August 2021.**

54)     Jorge and Marcos joined T-Mobile in 2018 and 2019, respectively. Upon information and belief, at or after they joined T-Mobile, Plaintiffs' personal and financial information, including, but not limited to, their full names, dates of birth, social security numbers, driver's license numbers, email addresses, physical addresses, bank information, and government identification numbers were provided by Plaintiffs directly to T-Mobile and/or obtained by T-Mobile through other means.

55)     In August 2021, T-Mobile notified Jorge and Marcos of a cybersecurity incident by posting the following to their T-Mobile account:

"T-Mobile has determined that unauthorized access to your personal information has occurred, including access to your name, date of birth, driver's license number, government identification numbers, and Social Security [taxpayer identification] numbers. We have no indication that personal financial or payment information or credit/debit card information was accessed."

56)     Upon receiving the notice, Jorge promptly took all of the necessary actions

advised by T-Mobile, which included changing passwords and pins and purchasing T-Mobile's Protection 360 plan to keep their identities and devices safe from all hackers and cyber criminals. However, as it proved later, all Plaintiffs' efforts were useless and T-Mobile's promises and representations to protect their sensitive personal and financial information safe were false and/or misleading.

57)     Plaintiffs' personal and proprietary information was compromised. As will be explained below, Hackers utilized the personal and proprietary information obtained through T-Mobile data breach in August 2021, to impersonate Jorge and take control of Marcos' mobile service and cell phone number in November 2021.

**F.  T-Mobile and Coinbase Allowed Unauthorized Access to Plaintiffs' Accounts and Cell Phone.**

58)     Towards the end of October 2021, Marcos possessed approximately $15,000 in his Coinbase account. By November 17, 2021, that amount increased to approximately $189,000. The Hackers were monitoring Marcos' Coinbase account and learned of the substantial increase in November 2021. Upon information and belief, the Coinbase data breach of March-May 2021 provided the Hackers with sufficient information and access to monitor Marcos' Coinbase account. Coinbase employees cooperated with and assisted Hackers by providing information to Hackers regarding Marcos' Coinbase account and the amount of cryptocurrencies possessed by him. Without Coinbase employees' assistance, Hackers would not have been able to effectuate their fraudulent activities in Marcos' Coinbase account.

59)    On November 17, 2021, knowing that Marcos possessed nearly $189,000 in his Coinbase account, Hackers decided to effectuate their fraudulent scheme and to steal Marcos' funds available in his Coinbase account. But for T-Mobile's and Coinbase's intentional actions and omissions, and their employees' intentional and knowing assistance and cooperation, the fraudster Hackers would not have been able to successfully get access to Plaintiffs' T-Mobile account, and take over Marcos' mobile service, cell phone number, Yahoo and Coinbase accounts, and to drain Marcos' Coinbase account.

60)    On November 17, 2021, at approximately 4 a.m. Hackers attempted to access and log into Marcos' Coinbase account. Upon information and belief, Hackers were unable to log into Marcos' Coinbase account as they needed to confirm a multi-factor code sent to Marcos' cell phone. Upon information and belief, Hackers' fake IP addresses showed locations other than the State of California. T-Mobile and Coinbase failed to detect and prevent the unauthorized and suspicious attempt to access Marcos' cell phone from different IP addresses.

61)    On November 17, 2021, at approximately 7:33 p.m., Hackers attempted to access and log into Marcos' Yahoo account. However, Hackers were unable to log into Marcos' Yahoo account as they needed to confirm a multi-factor code sent to Marcos' cell phone. Hackers attempted to access Marcos' Yahoo account through a fake IP address showing Medford, Oregan. T-Mobile failed to detect and prevent the unauthorized and suspicious attempt to access Marcos' cell phone from a different, fake IP address showing

Medford, Oregan.

62)      On November 17, 2021, T-Mobile and Coinbase both breached their duties to Marcos by failing to detect, inquire into, and promptly report the suspicious activities involving different, fake IP addresses showing states other than the State of California, all taking place in one day. T-Mobile breached its duties to Marcos by failing to detect, inquire into, and promptly report various suspicious attempts to access and log into Marcos' accounts from different , fake IP addresses. Coinbase breached its duties to Marcos by failing to detect, inquire into, and promptly report various suspicious attempts to access and log into Marcos' Coinbase account from different IP addresses. T-Mobile and Coinbase failed to notice that although Plaintiffs were located in the State of California, during the course of a single day different attempts to access their accounts were made apparently from multiple locations outside of the State of California. Both T-Mobile and Coinbase failed to freeze the accounts upon detecting suspicious activities.

63)      In the evening of November 17, 2021, Hackers impersonated Jorge. The Hackers called or visited in-person or contacted by other means the T-Mobile store located at 18070 FM 529 Rd., Cypress, Texas 77433-1168 ("Texas Store"). The Hackers utilized Plaintiffs' sensitive personal information and CPNI that Hackers had obtained during T-Mobile's data breach attack of August 2021 and requested the T-Mobile's employees to conduct a SIM card change on Marcos's phone.

64)      On November 17, 2021, at or approximately 7:51 p.m., T-Mobile's employees,

located at the Texas Store assisted the Hackers and complied with the Hackers' request without undertaking sufficient and adequate steps to verify Plaintiffs' identity. T-Mobile's employees failed to prevent the Hackers from accessing Plaintiffs' account and mobile service. T-Mobile's employees accessed Plaintiffs' account without their authorization, obtained and used Plaintiffs' confidential information and CPNI, and gave complete control of Marcos's mobile service and cell phone number to Hackers—all without Plaintiffs' knowledge or consent. Those Hackers then immediately used their control over Marcos' cell phone number and mobile account to access and take control of his sensitive personal and financial information and his accounts and steal nearly $188,345.00 from him. Nearly $6,140 of this sum consists of the fees charged by Coinbase for the unlawful transactions conducted by the Hackers.



**T··Mobile·**

**Receipt**

| Store | Customer | Date: | 11-17-2021 19:51:37 |
|---|---|---|---|
| T-MOBILE - 2887 | JORGE RODRIGUEZ | Account #: | *****604 |
| 18070 FM 529 RD | (305) 842-7686 | Register #: | 18 |
| CYPRESS, TX, 77433-1168 | | Trans #: | 2333 |
| (281) 463-0647 | | | |
| Sales Rep #: ****942 | | | |

**Transaction Details**

| SKU | Description | Qty @ Price | Extension |
|---|---|---|---|
| ZZZ260R060 | TRIPLESIM PLUG 64K T-MOBILE UICC 2017 | 1 @ 0.00 | $0.00 T |
| | Mobile Number : 6193956265 | | |
| | IMEI 8901260243790671814 | | |
| | Activation | | |
| | Not Discount Eligible | | |

| | | |
|---|---|---|
| | Sale Amount | $0.00 |
| | TAX 0.0 @ 8.25% | $0.00 |
| | Total Tax | $0.00 |
| Visit my.t-mobile.com to view details on your account | Total | $0.00 |
| | Payment Cash | $-0.00 |

If you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions and any terms specific to your rate plan.

If you have a device or accessory under one of our device programs, refer to your agreement for the specific terms and conditions of that program.

**Disputes.** T-Mobile REQUIRES ARBITRATION OF DISPUTES unless for new customers YOU OPT OUT WITHIN 30 DAYS OF ACTIVATION, or for existing customers YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS. For details see T-Mobile's Terms and Conditions at www.T-Mobile.com/terms-conditions.

**Return Policy.** T-Mobile will gladly assist you with your Returns. For in-store purchases, you can return or exchange a Device or accessory ("Device") for a refund within 14 days of the original Device. For all other purchases, you can return or exchange a Device for a refund within 20 calendar days of the date your Device was shipped. Return the Device with your receipt, in its package, with all contents, undamaged and in good working condition, with no material alterations to the Device's hardware or software. Refunds and exchanges will be less any rebates received and shipping costs (if applicable). Certain promotional offers may require you to return all items you received with your Device and could cause you to become ineligible for any promotional discounts. You may also be required to pay a restocking fee based on the Full Retail Price ("FRP") of the Device as follows: $70 for devices with a FRP of $600 or more; $40 for devices with a FRP between $300-$599; and $20 for devices with a FRP of less than $300.

**Prepaid services, e-coupons and gift cards are non-refundable.**

65)     On November 17, 2021, at approximately 7:53 p.m., upon receiving a text message from T-Mobile, Jorge learned that T-Mobile's SIM card on Marcos's cell phone was changed without Plaintiffs' knowledge or authorization.



66)     On November 17, 2021, at approximately 7:57 p.m., at the request of Hackers, another Yahoo verification code was sent to Marcos' hijacked cell phone number with a fake IP address showing Detroit, Michigan. Then, the hackers successfully logged into Marcos' Yahoo account from a fake IP address showing the State of New Jersey. T-Mobile did not promptly detect the unauthorized and suspicious activities showing different, fake IP addresses.

67)     Marcos's Yahoo account contained sensitive confidential personal and financial information, including, but not limited to, the following: Marcos's full name, date of birth, phone number, financial emails exchanged between Marcos and financial institutions such as Coinbase, business-related emails exchanged between Marcos and his business suppliers and

his business partners, and emails between Marcos and the CFO for Marcos's businesses.

68)     Upon successfully accessing Marcos' Yahoo account at approximately 7:57 p.m., Hackers used their control over Marcos' cell phone number and Yahoo account to successfully log into Marcos' Coinbase account. After conducting several transactions in Marcos' Coinbase account, at approximately 8:26 p.m., Hackers successfully withdrew and stole Marcos's cryptocurrencies. Marcos lost approximately $188,345.00 for the stolen funds and Coinbase's fees charged for the unlawful transactions.

69)     On November 17, 2021, at approximately 9:00 p.m., Marcos realized that his T-Mobile cell phone had lost service. Following his realization that his T-Mobile cell phone had lost service, Marcos checked his financial accounts on another device. Upon checking his Coinbase account, Marcos was horrified to find out that Hackers had accessed, and gained control over, his account. Marcos was horrified to learn that Hackers had conducted transactions on his account, without Marcos's knowledge or authorization, which had resulted in Marcos's funds being transferred out of his Coinbase account to unknown accounts.

70)     Thus, on November 17, 2021, at approximately 9:30 p.m., using Jorge's office's landline, Marcos promptly contacted Coinbase to report the unauthorized transactions which had resulted in a withdrawal of nearly $188,345.00 from his Coinbase account and fees charged by Coinbase. Marcos informed Coinbase that T-Mobile had allowed unauthorized access to his cell phone that very same day without Marcos' knowledge or authorization, and

even without knowledge or authorization of Jorge, the account holder. Marcos informed Coinbase that through the unauthorized SIM swap, Hackers accessed, and gained control over, Marcos's Coinbase account and conducted unauthorized transactions that resulted in diverting his funds to unknown accounts. Despite the urgency of the matter, and in lieu of undertaking immediate actions, the Coinbase customer service agent stated that it would take three to seven days for them to get back to Marcos. The agent stated that they would prepare a fraud report and provided Marcos with claim no. 08590307. Marcos was baffled as he expected that Coinbase immediately freeze the account, put a hold on all transactions, and attempt to retrieve his funds, in lieu of letting three to seven days pass without taking any actions that would prevent or reduce the harm to him.

71)    On November 17, 2021, at or around the time that Marcos noticed the loss of his cell phone service, he realized that he had also been logged out from his Yahoo email account, used for both personal and business purposes. Thus, on or about November 18, 2021, Marcos contacted the Yahoo customer service to inform them of an unauthorized access to his Yahoo account. The customer service agent stated that they would establish protective measures to Marcos's Yahoo email account.

72)    On November 17, 2021, at approximately 10:59 p.m., Jorge contacted T-Mobile's customer service and informed them that Marcos's telephone had been used in an unauthorized SIM card swap. Based on the representations made by T-Mobile customer service agent to Jorge during that phone call, Jorge was under the impression that he changed

the passcode and pin, restored the SIM card to Marcos's cell phone, and canceled the SIM card under the control of the Hackers. The T-Mobile customer service agent claimed that they would send a fraud report to the fraud department. At the instructions of the T-Mobile customer service agent, Marcos contacted the Sheriff's Department and attempted to report the theft on November 18, 2021.

73)     On November 18, 2021, Plaintiffs went to the T-Mobile store located in Santee, California as soon as the store opened. Plaintiffs spoke to the store manager and apprised him of all the unlawful transactions that had occurred the day before. The store manager claimed there was nothing he could do and provided Plaintiffs with a telephone number to the T-Mobile fraud department. The store manager expressed his opinion that T-Mobile was responsible for what had transpired. At the instruction of the T-Mobile store manager, Marcos contacted the fraud department for the second time and filed the same complaint as the one that had been filed the night of the incident. In lieu of taking immediate actions, the fraud department's representative stated that they would get back to Marcos by November 26, 2021.

74)     On November 25, 2021, Marcos received an email from the Coinbase customer service wherein he was advised that Coinbase had just placed a hold on Marcos's account until the account became secure. Coinbase alleged that pending transactions could not be frozen due to the irrevocable nature of digital currency transactions. This came as a surprise to Marcos as he had called Coinbase on November 17, 2021, notifying them of the unlawful

transactions, within an hour and thirty minutes following the Hackers' access to his Coinbase account. Marcos believed, and herein alleges, that with the notification that he had provided to Coinbase, it was afforded with an ample opportunity to place a hold on the ongoing transactions and retrieve his funds. Yet, Coinbase failed to promptly undertake any reasonable steps to stop the pending transactions. In fact, the information available in Marcos' Coinbase account shows that the pending transactions did not become final, and the stolen funds did not leave Marcos' Coinbase account until November 19, 2021. As of November 18, 2021, nearly $188,345.00 remained in Marcos' Coinbase account and by November 19, 2021, these funds left Marcos' Coinbase account.

## **FIRST CAUSE OF ACTION**

**(Violations of the Federal Communications Act ("FCA"), 47 U.S.C. § 201 *et seq.*)**

**(AGAINST DEFENDANT T-MOBILE)**

75)     Plaintiffs hereby incorporates by reference paragraphs 1-74 of this Complaint as if fully set forth herein.

76)     The FCA regulates interstate "telecommunications carriers" such as T-Mobile. T-Mobile is a "telecommunications carrier" and a "common carrier" within the meaning of the the FCA. T-Mobile is a "common carrier" engaged in interstate communication by wire for the purpose of furnishing communication services under the FCA. Furthermore, T-Mobile is a "telecommunications carrier" under the FCA, which requires every telecommunication carrier to protect, among other things, the confidentiality of customers'

proprietary network information ("CPNI").  Thus, T-Mobile is subject to the requirements of sections 201 through 222 of the FCA.

77)   Under sections 201(b) and 202 (a) of the FCA, requiring T-Mobile as a common carrier to impose practices and regulations that are "just and reasonable" and prohibiting it from making any unjust or unreasonable discrimination in practices, regulations or services, T-Mobile's conduct constitutes a knowing violation of sections 201 (b) and 202 (a). T-Mobile is also liable for the acts, omissions, or failures, as alleged herein, of its officers, agents, employees, or other persons acting for T-Mobile.

78)   Under section 222 (a) and (c) of the FCA, requiring T-Mobile to protect the confidentiality and security of its customers' sensitive, confidential information, as well as the CPNI, T-Mobile has failed to protect the personal and financial information as well as the CPNI of Plaintiffs. T-Mobile has violated the FCA and its sections 222 (a) and (c) as it used, disclosed, and/or permitted access to Plaintiffs' confidential personal and financial information as well as their CPNI. T-Mobile has violated the FCA and its sections 222 (a) and (c) also because it permitted third party Hackers/thieves to use, disclose, and/or access Plaintiffs' confidential personal and financial information as well as their CPNI without the notice, consent, and/or legal authorization required under the FCA.

79)   As alleged above, T-Mobile notified Plaintiffs that they were victims of T-Mobile's data breach in August 2021, where their personal information and CPNI, including their full names, dates of birth, driver's license numbers, government identification numbers,

and Social Security [taxpayer identification] numbers were compromised. T-Mobile failed to protect the CPNI and allowed hackers to gain unauthorized and unlawful access to both Plaintiffs' CPNI in August 2021. Prior to the disclosure of their CPNI, T-Mobile did not receive an affirmative written request by Plaintiffs, nor did it receive their written/oral consent or authorization.

80)     As also alleged above, T-Mobile gave the hackers unauthorized and unlawful access to Marcos' mobile service cell phone number on November 17, 2021 and allowed his personal and financial information be compromised. On November 17, 2021, T-Mobile intentionally and knowingly failed to comply with its obligations under the FCC, as the T-Mobile employees/agents in Texas Store complied with the hackers' request and accessed to, reviewed, and used Marcos' CPNI available to T-Mobile, without Plaintiffs' authorization or consent.

81)     As alleged above, as a direct and proximate result of T-Mobile's violations of the FCA, Marcos has suffered extensive injury to his property. He has lost his cryptocurrencies stored in his Coinbase account.

82)     T-Mobile's conduct, as alleged here, constitutes a knowing violation of FCA.

83)     Under section 206 of the FCA and other applicable sections, T-Mobile is liable to Marcos for the full amount of damages sustained in consequence of its violation of the provisions of this Act, together with a reasonable attorney's fees.

///

## SECOND CAUSE OF ACTION

### (Violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200)

### (AGAINST DEFENDANTS T-MOBILE AND COINBASE)

84)     Plaintiffs hereby incorporates by reference paragraphs 1-83 of this Complaint as if fully set forth herein.

85)     In violation of the UCL, T-Mobile's and Coinbase's business acts, practices, and conduct, alleged herein, were unlawful, unfair, and fraudulent.

86)     As alleged herein, T-Mobile and Coinbase presented sales and marketing materials and made false and/or misleading representations and omissions concerning material issues: their safety and privacy policies and their safeguarding of Plaintiffs' sensitive personal and financial information and CPNI. A reasonable person would attach importance to the privacy of his or her sensitive, confidential personal and financial information in determining whether to contract with a wireless service provider or an online cryptocurrency exchange platform.

87)     As alleged herein, both T-Mobile and Coinbase had duties to disclose the nature of their inadequate security and privacy practices and failures in hiring, training, and supervising staff. Both T-Mobile and Coinbase had exclusive knowledge of material facts not known or knowable to their customers, including Plaintiffs, and both T-Mobile and Coinbase actively concealed the material facts from their customers, including Plaintiffs.

88)     As alleged herein, T-Mobile was required to make disclosures of material facts that it did allow, or could not prevent, disclosures, use, and access to customers' confidential

information such as CPNI, to unauthorized third parties, without customers' knowledge or consent. The magnitude of the harm suffered by Plaintiffs underscores the materiality of T-Mobile's omissions.

89)     As alleged herein, a reasonable person, such as Plaintiffs, would be deceived and misled by T-Mobile's and Coinbase's misrepresentations, which indicated that T-Mobile and Coinbase would safeguard their customers' personal and proprietary information.

90)     As alleged herein, T-Mobile and Coinbase, intentionally misled their customers, including Plaintiffs, regarding their data protection practices and safety of their platforms in order to attract customers, such as Plaintiffs, and evade prosecution for their unlawful acts.

91)     T-Mobile's actions and omissions, alleged herein, constitute unlawful business acts and practices. As alleged in this Complaint, T-Mobile's conduct and omissions are violation of the FCA, CLRA, and the California constitutional right to privacy.

92)     Coinbase's actions and omissions, alleged herein, constitute unlawful business acts and practices. As alleged in this Complaint, Coinbase's conduct and omissions are violation of the CLRA and the California constitutional right to privacy.

93)     As alleged herein, T-Mobile's and Coinbase's conduct lack reasonable and legitimate justification in that Plaintiffs were misled as to the nature and integrity of their services and Plaintiffs have suffered injury as a result. The gravity of the harm caused by T-Mobile's and Coinbase's practices far outweigh the utility of their conduct.

94)     As alleged herein, had T-Mobile and Coinbase disclosed the true nature and

extent of their data security and protection practices and the flaws in their systems, and their unwillingness to properly protect their customers, Plaintiffs would not have subscribed for their services. Had Coinbase been truthful about not being the safest online cryptocurrency exchange platform, and avoided this unfair and fraudulent competition strategy, Marcos would not have subscribed for its services.

95)     As alleged herein, had T-Mobile and Coinbase been truthful and disclosed the material information that their employees were unfit and inadequately trained to impede and detect unlawful activities and to also assist customers properly and promptly in the event issues arose, Plaintiffs would not have subscribed for their services.

96)     As alleged herein, as a direct and proximate result of T-Mobile's fraudulent business acts and transactions, Plaintiffs' personal and proprietary information was compromised. As alleged herein, as a direct and proximate result of T-Mobile's and Coinbase's fraudulent business acts and practices, Marcos has suffered injury in fact and economic harm.

97)     Plaintiffs seek injunctive and declaratory relief for both T-Mobile's and Coinbase's violations of the UCL. Plaintiffs also seek disgorgement of profits and money acquired by T-Mobile and Coinbase by means of unfair and fraudulent competition, which includes, but is not limited to, all monthly payments made by Plaintiffs for T-Mobile's services as well as fees charged by Coinbase.

///

## **THIRD CAUSE OF ACTION**

**(Violations of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150)**

**(AGAINST DEFENDANT T-MOBILE)**

98)     Plaintiffs hereby incorporates by reference paragraphs 1-97 of this Complaint as if fully set forth herein.

99)     T-Mobile is a corporation that is organized or operated for the profit or financial benefit of its owners, with annual gross revenues over $25 million. T-Mobile collects consumers' personal information as defined under section 1798.140 of the CCPA.

100)   As alleged herein, T-Mobile violated section 1798.150 of the CCPA by failing to prevent Plaintiffs' nonencrypted and nonredacted personal information from unauthorized access and exfiltration, theft, or disclosure as a result of T-Mobile's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiffs' personal information.

101)   As alleged herein, as a direct and proximate result of T-Mobile's acts, Plaintiffs were subjected to unauthorized access and exfiltration, theft, or disclosure as a result of T-Mobile's violation of its duties:

a)      In August 2021, as a result of T-Mobile's violation of its duty to implement and maintain reasonable security procedures and practices, the third-party hackers gained unauthorized access to and exfiltrated, stole, and disclosed Plaintiffs' nonencrypted and nonredacted personal and proprietary information.  T-Mobile notified Plaintiffs that in August 2021, the third-party hackers accessed to and

exfiltrated, stole, and disclosed Plaintiffs' personal information, including Plaintiffs' full names, dates of birth, driver's license numbers, government identification numbers, and Social Security [taxpayer identification] numbers.

b)   On November 17, 2021, as a result of T-Mobile's violation of its duty to implement and maintain reasonable security procedures and practices, Marcos' nonencrypted and nonredacted personal and proprietary information was subjected to further/additional unauthorized access and exfiltration, theft and disclosure by the third-party hackers when T-Mobile gave them complete control over Marcos' cell phone. Through their control over Marcos' cell phone, given to them by T-Mobile, the third-party hackers easily and swiftly also exfiltrated, stole, and disclosed Marcos' sensitive financial information regarding his businesses available in his Yahoo account and also the sensitive financial information, and cryptocurrencies, available in his Coinbase account. Through control over Marcos' cell phone, given to them by T-Mobile, the third-party hackers easily and swiftly exfiltrated, stole, and disclosed necessary security codes, access codes, and passwords that permitted the hackers to access to Marcos' Yahoo account and Coinbase account.

102)   As alleged herein, prior to August 2021 data breach and prior to November 2021 SIM swap scam, T-Mobile knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiffs and that the risk of a data

breach, SIM swap attack, and theft were high likely. T-Mobile failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal and proprietary information of Plaintiffs.

103)   In the beginning of February 2022, Plaintiffs sent written, formal notices of claims to both T-Mobile and Coinbase informing each one of them of the specifics of Plaintiffs' claims. T-Mobile and Coinbase have each provided written responses to Plaintiffs' written notices of claims, denying any responsibility or failure on their part and blaming Plaintiffs for what transpired. T-Mobile failed to cure its violations of the CCPA within 30 days of Plaintiffs' written notice to it identifying the specific provisions of the CCPA Plaintiffs allege have been violated. T-Mobile failed to provide an express written statement that the violations have been cured and that no further violations shall occur, as required by section 1798.150 of the CCPA.

104)   As a direct and proximate result of T-Mobile's acts, Plaintiffs were injured and lost money. Plaintiffs seek relief under section 1798.150 (a) of the CCPA, including, but not limited to, recovery of actual damages, or statutory damages (whichever is greater), and any other relief the Court seems proper.

## FOURTH CAUSE OF ACTION

### (Violations of the California Constitutional Right to Privacy)

### (AGAINST ALL DEFENDANTS)

105)   Plaintiffs hereby incorporates by reference paragraphs 1-104 of this Complaint as if fully set forth herein.

106)   The California Constitution affords a right to privacy to its citizens including Plaintiffs.

107)   Plaintiffs have a legally reasonable expectation of privacy in their mobile devices, their T-Mobile's account information, Coinbase account, and all of their sensitive personal and financial information.

108)   Any T-Mobile customer would reasonably expect T-Mobile and its employees and agents not to access, disclose, or divulge his or her personal information or CPNI without the customer's authorization and consent, in light of the legal protections to which that information is subject. Any T-Mobile customer would reasonably expect T-Mobile and its employees and agents not to access and/or provide access to and/or control over the customer's mobile service or cell phone to unauthorized third parties.

109)   Any Coinbase user would reasonably expect Coinbase and its employees and agents not to access, disclose, or divulge his or her personal or financial information without the user's authorization and consent. Any Coinbase user would reasonably expect Coinbase not to allow its employees, agents, or third-party hackers to access and/or monitor the financial activities and the financial information of its user's account, without the user's authorization and consent.  Any Coinbase user would reasonably expect Coinbase and its employees and agents not to monitor and provide information to third-party hackers regarding the financial activities and the financial information of its user's account, without the user's authorization and consent.

110)   As alleged herein, T-Mobile intentionally intruded on and into Plaintiffs' solitude, seclusion, or private affairs by intentionally and knowingly allowing third-party hackers to improperly access Plaintiffs' confidential personal and proprietary information as alleged herein, in August 2021.

111)   As alleged herein, T-Mobile and its employees intentionally intruded on and into Plaintiffs' solitude, seclusion, or private affairs by intentionally and knowingly allowing its employees/agents and third-party hackers to improperly access Marcos' mobile phone and personal and proprietary information as alleged herein, in November 2021.

112)   Coinbase intentionally intruded on and into Marcos's solitude, seclusion, or private affairs by intentionally and knowingly allowing its employees/agents and third-party hackers to improperly access and monitor Marcos' financial activities and the financial information of Marcos' account during the March-May 2021 data breach, and thereafter, until November 17, 2021.

113)   As alleged herein, on November 17, 2021, T-Mobile employees, in the scope of their employment intentionally accessed Marcos' mobile device and assisted the third-party hackers in accessing his mobile device, without Marcos' or Jorge's authorization.

114)   As alleged herein, at or after Marcos subscribed for Coinbase, Coinbase employees, in the scope of their employment intentionally accessed and monitored Marcos's Coinbase account and provided information to the third-party hackers regarding Marcos's financial activity and the financial content of his accounts, without Marcos' authorization.

115)   The reasonableness of Plaintiffs' expectations of privacy is supported by T-Mobile, Coinbase, and their agents' positions to safeguard Plaintiffs' accounts data, including the proprietary, personal, and financial information contained therein, and protect Marcos from SIM swap attack and unauthorized disclosure and use of his accounts data.

116)   T-Mobile, Coinbase, and their agents' intrusion into Plaintiffs' privacy are so serious and highly offensive to a reasonable person. This is evidenced by federal legislation enacted by Congress and rules promulgated and enforcement actions undertaken by such as the FCC aimed at protecting T-Mobile customers' sensitive account data from unauthorized use or access. Furthermore, T-Mobile, Coinbase, their agents' intrusion into Plaintiffs' privacy violated social norms in light of the expectations created by T-Mobile's and Coinbase's statements regarding the privacy and security of their customers' personal information and CPNI and their legal obligations to protect their customers' personal information and CPNI.

117)   The data breach in August 2021 allowed hackers to access Plaintiffs' sensitive, confidential information in their T-Mobile account. The data breach in March-May 2021 allowed hackers to access Marcos' sensitive confidential financial information in his Coinbase account. The SIM swap attack in November 2021 enabled the hackers to use their control over Marcos' cell phone to intercept text messages, and to access Marcos' accounts and sensitive, confidential financial and personal information. The sensitivity of the CPNI compromised in August 2021 and the financial and personal information in November 2021

is very high.

118)   The offensiveness of T-Mobile's and Coinbase's conduct is heightened by their material misrepresentations to Plaintiffs regarding the safety and security of their accounts. T-Mobile and Coinbase intentionally misled Plaintiffs regarding their data security practices in order to lure them to subscribe for T-Mobile's and Coinbase's services and later on to maintain their business, and make money from Plaintiffs' account, and evade prosecution for its unlawful acts.

119)   As alleged herein, as a result of T-Mobile's and Coinbase's violations of Plaintiffs' right to privacy, they have suffered great financial hard. T-Mobile's and Coinbase's actions, conduct, and omissions complained of herein were a substantial factor in causing the harm suffered by Plaintiffs. But for T-Mobile's failure to protect Plaintiffs from such harm through adequate security procedures, Plaintiffs' private affairs would not have been disclosed in August 2021. But for T-Mobile's failure to protect Plaintiffs from such harm through adequate security procedures, properly hiring and training employees, and preventing unauthorized access to Marcos' mobile phone, Plaintiffs would not have been harmed in November 2021. But for Coinbase's failure to protect Marcos from such harm through adequate security procedures, properly hiring and training employees, and preventing unauthorized access to his account, Marcos would not have been harmed in November 2021. But for T-Mobile's and Coinbase's failure to undertake proper actions, including but not limited to freezing accounts, upon detecting unlawful activities and

unauthorized attempts to access Plaintiffs' accounts from different IP addresses, Plaintiffs would not have been harmed. But for Coinbase's failure to be responsive and to undertake proper and prompt actions upon receiving reports from Plaintiffs, Marcos would not have been harmed in November 2021.

120)   As a result of T-Mobile's, Coinbase's, and their employees' actions, and Hackers' actions, Plaintiffs seek their actual damages. Plaintiffs seek recovery for the actual financial damages to them on November 17, 2021.

121)   As a result of T-Mobile's actions, Plaintiffs seek punitive damages. The foregoing actions and conduct by T-Mobile, and its officers, directors, and/or managing directors, were done intentionally and/or in conscious disregard of the rights of Plaintiffs and done maliciously, oppressively, and fraudulently. T-Mobile and its officers, directors, and/or managing agents knew or should have known about the risks faced by Plaintiffs and the grave consequences of such risks, and, nonetheless, acted with a conscious disregard of the rights of Plaintiffs and/or ratified or authorized the wrongful conduct of other employees who caused Plaintiffs to suffer the harms alleged herein. T-Mobile, and its officers, directors, and/or managing agents had advance knowledge of the inadequacy of the security policies and/or the unfitness of the employees. T-Mobile had advance knowledge of such inadequacies and issues, as Plaintiffs are not the first victims due to T-Mobile's actions and omissions. Since 2018, T-Mobile has admitted at least six data breaches and SIM swap attacks, which have impacted tens of millions of T-Mobile customers. Most, if not all, of

these breaches happened before November 17, 2021 and August 2021. Furthermore, in or about March 2020, FCC imposed nearly $91 million fine on T-Mobile relating to T-Mobile's failure to put adequate safeguards in places and unauthorized sales of customers' data to third parties. [9] Despite their knowledge, T-Mobile, and its officers, directors, and managing directors, utterly failed to protect Plaintiffs by properly training the employees, and/or hiring fit employees and implementing proper and adequate security procedures. Punitive damages are warranted to deter T-Mobile from engaging in future misconduct.

## **FIFTH CAUSE OF ACTION**

### **(NEGLIGENCE)**

### **(AGAINST DEFENDANT T-MOBILE)**

122)   Plaintiffs hereby incorporates by reference paragraphs 1-121 of this Complaint as if fully set forth herein.

123)   T-Mobile owed a duty to Plaintiffs—arising from the sensitivity of their T-Mobile account information and the foreseeability of harm to Plaintiffs should T-Mobile fail to comply by its duties:

a)   To exercise reasonable care in obtaining, using, retaining, securing, safeguarding, and protecting Plaintiffs' personal and proprietary information from unauthorized third parties' access;

b)   To protect personal and proprietary information of Plaintiffs in its possession

---

9 Cellphone Carriers Face $200 Million Fine for Not Protecting Location Data, The New York Times, February 28, 2020, https://www.nytimes.com/2020/02/28/technology/fcc-cellphones-location-data-fines.html

using reasonable and adequate security procedures that are compliant with industry-standard practices;

c)   To protect Plaintiffs' sensitive account data from unauthorized use, access, or disclosure;

d)   To ensure that Plaintiffs' CPNI and personal information was used, accessed, or disclosed only with proper consent;

e)   To implement a system to safeguard against and detect unauthorized access to Plaintiffs' T-Mobile account data in a timely manner;

f)   To disclose the material fact that its data security practices were inadequate to safeguard Plaintiffs' T-Mobile account data from unauthorized access by its own employees and others;

g)   To complete a proper background check on employees and hire fit employees;

h)   To properly and adequately train its employees; and

i)   To properly and adequately supervise its employees.

124)   Federal law and regulations, as well as T-Mobile's privacy policy acknowledge T-Mobile's duty to adequately protect Plaintiffs' confidential account information.

125)   T-Mobile had a special relationship with Plaintiffs due to its status as their telecommunications carrier, which provided an independent duty of care. T-Mobile had the unique ability to protect its systems and the data it stored thereon from unauthorized access. At the time Plaintiffs joined T-Mobile, they were required to share their personal information

and CPNI with T-Mobile as a result of their agreement with T-Mobile, and the sharing of their personal information and CPNI with T-Mobile was based on the understanding that T-Mobile would protect that information. It was foreseeable that Plaintiffs would suffer injury if T-Mobile did not protect Plaintiffs' sensitive, confidential personal information and CPNI. It was also foreseeable that Marcos would suffer injury from a SIM swap attack.

126)   T-Mobile breached its duties by:

a)   Failing to exercise reasonable care in obtaining, using, retaining, securing, safeguarding, and protecting Plaintiffs' personal and proprietary information from unauthorized third parties and access;

b)   Failing to protect personal and proprietary information of Plaintiffs in its possession using reasonable and adequate security procedures that are compliant with industry-standard practices;

c)   Failing to protect Plaintiffs' sensitive account data from unauthorized use, access, or disclosure;

d)   To ensure that Plaintiffs' CPNI and personal information was used, accessed, or disclosed only with proper consent;

e)   Failing to implement a system to safeguard against and detect unauthorized access, or attempt access, to Plaintiffs' T-Mobile account data in a timely manner;

f)   Failing to disclose the material fact that is data security practices were

inadequate to safeguard Plaintiffs' T-Mobile account data from unauthorized access by its own employees and others;

g) Failing to complete a proper background check on employees and hire fit employees;

h) Failing to properly and adequately train its employees; and

i) Failing to properly and adequately supervise its employees.

127) But for T-Mobile's breaches of its duties, Plaintiffs' sensitive and confidential information would not have been accessed by and used by unauthorized persons.

128) The data breach in August 2021 and the SIM swap attack on November 17, 2021 were both foreseeable events, as multiple data breaches and/or SIM swap attached had happened to T-Mobile prior to August 2021. Furthermore, FCC, FBI, and other government agencies had issued warnings and posted articles, prior to August 2021, regarding the industrywide data breach and SIM swap attacks. Furthermore, Marcos was a foreseeable victim of SIM swap attacks, as T-Mobile knew that Marcos and Jorges's sensitive personal information and CPNI had been disclosed to third-party hackers during the data breach of August 2021. Additionally, the data breach in August 2021 and the SIM swap attack on November 17, 2021 were both foreseeable events, as prior to both events, T-Mobile and its agents knew or should have known that improper and inadequate procedures and systems to safeguard customer data could allow unauthorized persons' accessing Plaintiffs' sensitive information and CPNI.

129)   T-Mobile's negligent conduct provided a means for unauthorized third-party hackers to access Plaintiffs' personal information and CPNI in August 2021 and also November 2021, take over control of Marcos' mobile phone, and use such access to hack into Marcos' online accounts in order to rob him and steal his personal information and cryptocurrencies.

130)   As a direct and proximate result of T-Mobile's failures, Plaintiffs suffered grave damage. Therefore, Plaintiffs are entitled to damages in an amount to be proven at trial, but in no case, less than the amount of cryptocurrencies lost to the hackers and the fees charged by Coinbase.

## SIXTH CAUSE OF ACTION
### (NEGLIGENCE)
### (AGAINST DEFENDANT COINBASE)

131)   Plaintiffs hereby incorporates by reference paragraphs 1-130 of this Complaint as if fully set forth herein.

132)   Coinbase owed a duty to Marcos—arising from the sensitivity of his account information and the foreseeability of harm to Marcos should Coinbase fail to comply by its duties:

a)   To exercise reasonable care in obtaining, using, retaining, securing, safeguarding, and protecting Marcos' personal, proprietary, and financial information from unauthorized third parties' access;

b)   To protect personal, proprietary, and financial information of Marcos in its

possession using reasonable and adequate security procedures that are compliant with industry-standard practices;

c)      To protect Marcos' sensitive account data from unauthorized use, access, or disclosure;

d)      To ensure that Marcos' sensitive personal, proprietary, and financial information was used, accessed, or disclosed only with proper consent;

e)      To implement a system to safeguard against and detect unauthorized access, or attempts to access, to Marcos' account and financial information in a timely manner;

f)      To disclose the material fact that its data security practices were inadequate to safeguard Marcos' confidential and sensitive personal and financial information, and his account, from unauthorized access by its own employees and others;

g)      To complete a proper background check on employees and hire fit employees;

h)      To properly and adequately train its employees; and

i)      To properly and adequately supervise its employees.

133)   Federal law and regulations, as well as Coinbase's statements and policies acknowledge T-Mobile's duty to adequately protect Marcos and his account.

134)   Coinbase had a special relationship with Marcos as Coinbase had the unique ability to protect its systems and the data it stored thereon from unauthorized access and use.

At the time Marcos joined Coinbase, he was required to share his personal, proprietary, and financial information with Coinbase, and to entrust Coinbase with his monies and funds, as a result of his agreement with Coinbase, and the sharing of his confidential and sensitive personal, proprietary, and financial information and entrustment of his monies and funds with Coinbase was based on the understanding that Coinbase would protect that information and his monies and funds. It was foreseeable that Marcos would suffer injury if Coinbase did not protect Marcos' sensitive, confidential personal, proprietary, and financial information as well the monies and funds stored in his Coinbase account.

135) Coinbase breached its duties by:

a)   Failing to exercise reasonable care in obtaining, using, retaining, securing, safeguarding, and protecting Marcos' personal, proprietary, and financial information from unauthorized third parties' access;

b)   Failing to protect personal, proprietary, and financial information of Marcos in its possession using reasonable and adequate security procedures that are compliant with industry-standard practices;

c)   Failing to protect Marcos' sensitive account data and financial information from unauthorized use, access, or disclosure;

d)   To ensure that Marcos' personal, proprietary, and financial information was used, accessed, or disclosed only with proper consent;

e)   Failing to implement a system to safeguard against and detect unauthorized

access, or attempt to access, to Marcos' account data, financial information, and funds in a timely manner;

f)     Failing to disclose the material fact that is data security practices were inadequate to safeguard Marcos' account data, financial information, and funds, from unauthorized access by its own employees and others;

g)     Failing to hire fit employees and failing to train and supervise its employees properly; and

h)     Failing to properly and adequately train employees so that they properly assist users, such as Marcos, to prevent harm and/or further harm and/or reduce the magnitude of harm when users report fraudulent activities, in a timely manner.

136)   But for Coinbase's breaches of its duties, Marcos' sensitive and confidential personal, proprietary, and financial information would not have been accessed by and used by unauthorized persons. But for Coinbase's breaches of its duties, Marcos would not have lost his funds.

137)   Coinbase's negligent conduct provided a means for unauthorized third-party hackers to access Marcos' personal, proprietary, and financial information and funds in November 2021. Coinbase's negligent conduct in protecting the privacy and safety of Marcos' account, and to properly train and monitor its employees, resulted in Marcos' loss of his funds.

138)   As a direct and proximate result of Coinbase' failures, Marcos suffered grave

damage. Therefore, Marcos is entitled to damages in an amount to be proven at trial, but in no case, less than the amount of cryptocurrencies lost to the hackers and the fees charged by Coinbase.

## SEVENTH CAUSE OF ACTION

### (Violations of California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*)

### (AGAINST DEFENDANTS T-MOBILE AND COINBASE)

139)   Plaintiffs hereby incorporates by reference paragraphs 1-138 of this Complaint as if fully set forth herein.

140)   Through his counsel, Plaintiffs sent letters (notices of claims) to T-Mobile and Coinbase, via mail and email, on or about February 3, 2022.  A draft of this Complaint was attached to the letters, identifying the violations Plaintiffs allege against T-Mobile and Coinbase. In response to the letters, Plaintiffs have not received any meaningful proposed resolution or settlement from either T-Mobile or Coinbase.T-Mobile and Coinbase have each provided written responses to Plaintiffs' written notices of claims, denying any responsibility or failure on their part and blaming Plaintiffs for all that transpired. Attached hereto as **Exhibit A** is Plaintiffs' declarations of venue required by California Civil Code section 1780(d).

141)   As alleged herein, Plaintiffs subscribed for and acquired services of both T-Mobile and Coinbase.

142)   As alleged herein, pursuant to California Civil Code section 1770, T-Mobile and

Coinbase engaged in unfair methods of competition and unfair or deceptive acts or practices intended to result and which did result in the sale of their services to Plaintiff.

143)   As alleged herein, T-Mobile's and Coinbase's statements and representations regarding their privacy and security procedures to protect their customer account data, including Plaintiff's data and information, is very likely to mislead reasonable consumers, as at misled Plaintiff.

144)   As alleged herein, T-Mobile and Coinbase represented that their services have characteristic and/or benefits and/or quality which they do not have. They both represented that their platforms were safe and secure, and that Plaintiff's confidential data would be safeguarded and protected.

145)   As alleged herein, T-Mobile's service and Coinbase's service did not protect and/or safeguard Plaintiff's data from unauthorized access and disclosures.

146)   As alleged herein, T-Mobile's and Coinbase's misrepresentations, omissions, and misconduct concerning their safeguarding and protecting customers' account data and providing a secure and safe platform for their transactions were materially misleading.

147)   As alleged herein, both T-Mobile and Coinbase failed to discharge their obligations by disclosing the shortcomings of their safeguarding practices and policies and actively concealed that their safeguarding practices were inadequate to protect their customers' data.

148)   As alleged herein, Plaintiffs reasonably and actually relied on all

misrepresentations by both T-Mobile and Coinbase, which caused him to suffer financial harm.

149)   T-Mobile's and Coinbase's actions and conduct and omissions alleged herein were a substantial factor in causing the harm suffered by Plaintiff.

150)   Plaintiffs seek damages, including actual, statutory, and punitive damages, as well as attorney's fees for T-Mobile's and Coinbase's violations of the CLRA.

151)   As a result of T-Mobile's and Coinbase's actions, Plaintiffs seek punitive damages. The foregoing actions and conduct by T-Mobile and Coinbase, were done intentionally and/or in conscious disregard of the rights of Plaintiffs and done maliciously, oppressively, and fraudulently.

## <u>EIGHTH CAUSE OF ACTION</u>

**(Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030)**

**(AGAINST DEFENDANTS)**

152)   Plaintiffs hereby incorporates by reference paragraphs 1-151 of this Complaint as if fully set forth herein.

153)   Plaintiff's cell phone is capable of connecting to the Internet.

154)   T-Mobile's employees, in the scope of their employment, intentionally accessed Plaintiff's cell phone, and assisted others in accessing his cell phone, without Plaintiff's authorization, in order to assist the Hackers in their theft of Plaintiff.

155)   T-Mobile's employees took these actions knowing that they would cause damage to Plaintiff's cell phone, as well as damage to the information located on the phone.

156)   The T-Mobile employees caused Marcos' cell phone and much of the data on it to be unusable to him.

157)   Because of the T-Mobile employees' actions, Marcos suffered damage to his cell phone and damage to the information on the cell phone, including being unable to access information and data and being unable to access his personal accounts, including Yahoo and Coinbase.

158)   The act of swapping Marcos's T-Mobile mobile SIM card was in the scope of the T-Mobile employees' work.

159)   Marcos has lost the approximate sum of $188,345.00 in his cryptocurrency account as a result of T-Mobile's and its employees' violation of CFAA. Marcos has also spent in excess of $5,000 investigating this claim.

160)   Plaintiffs seek compensatory damages and injunctive relief against T-Mobiles.

**WHEREFORE** PLAINTIFFS pray judgment against DEFENDANTS, and each of them, as follows:

161)   On the **First Cause of Action**:

    (a) Monetary damages for actual damages suffered;

    (b) Reasonable attorney's fees;

162)   On the **Second Cause of Action**:

    (a) Injunctive relief requiring cessation of Defendants' acts and practices complained of herein;

(b) Declaratory relief;

(c) disgorgement of profits and money acquired by Defendants by means of unfair and fraudulent competition;

163)   On the **Third Causes of Action**:

(a) Monetary damages for actual damages suffered or statutory damages, whichever is greater;

164)   On the **Fourth Cause of Action**:

(a) Monetary damages for actual damages suffered;

(b) Punitive damages;

165)   On the **Fifth Cause of Action**:

(a) Monetary damages for actual damages suffered;

166)   On the **Sixth Causes of Action**:

(a) Monetary damages for actual damages suffered;

167)   On the **Seventh Causes of Action**:

(a) Monetary damages for actual damages suffered;

(b) Reasonable attorney's fees;

(c) Punitive damages;

168)   On the **Eighth Causes of Action**:

(a) Monetary damages for actual damages suffered

(b) Injunctive relief requiring cessation of Defendants' acts and practices

complained of herein;

169)   On **All Causes of Action**:

(a) For cost of suit incurred herein; and

(b) For such other relief as the Court may deem proper.

Respectfully submitted,

SHARIF | FAUST LAWYERS, LTD.

Dated: April 25, 2022          By: _____
                                        /s/ Matthew J. Faust
                                        Matthew J. Faust
                                        Yasaman Sharif
                                        Attorneys for Plaintiffs
                                        Jorge and Marcos Rodriguez

# EXHIBIT A

Khodadad D. Sharif, State Bar No. 187992
Matthew J. Faust, State Bar No. 254145
Yasaman Sharif, State Bar No. 298318
SHARIF | FAUST LAWYERS, LTD.
600 B Street, Suite 2490
San Diego, CA  92101
Telephone:   (619) 233-6600
Facsimile:    (619) 233-6602

Attorneys for Plaintiffs
Marcos Rodriguez and Jorge Rodriguez

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCOS ANTONIO RODRIGUEZ, an individual, JORGE LUIS RODRIGUEZ, an individual | Case No.:  **'22CV581  BEN DEB** |
| Plaintiffs, | CLRA DECLARATION OF PLAINTIFF JORGE LUIS RODRIGUEZ PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d) |
| vs. | |
| T-MOBILE USA, INC. a Delaware Corporation, COINBASE, INC., a Delaware Corporation, and DOES 1 through 20, | |
| Defendants. | |

I, Jorge Luis Rodriguez, hereby declare as follows:

1.  I am a resident of California, over the age of eighteen years.  I am the Plaintiff in this action. I have personal knowledge of the facts herein and if called upon to testify I would and could do so competently.

2.  The Complaint in this lawsuit, filed concurrently with this declaration, is filed in the

proper place for trial under California Civil Code section 1780, subdivision (d).

Defendants T-Mobile USA, Inc. and Coinbase, Inc. conduct substantial business within San Diego County. A substantial portion of the events and transactions alleged in the Complaint occurred within San Diego County.

I declare under the penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.


Dated:                                    By:    See Next Page For Electronic Signature
                                                      Plaintiff Jorge Luis Rodriguez

1  proper place for trial under California Civil Code section 1780, subdivision (d).

2  Defendants T-Mobile USA, Inc. and Coinbase, Inc. conduct substantial business

3

4  within San Diego County. A substantial portion of the events and transactions

5  alleged in the Complaint occurred within San Diego County.

6

7  I declare under the penalty of perjury under the laws of the State of California and

8  United States of America that the foregoing is true and correct.

9

10  Dated: April 25th, 2022

11  By: _____

12  Plaintiff Jorge Luis Rodriguez

13

Khodadad D. Sharif, State Bar No. 187992
Matthew J. Faust, State Bar No. 254145
Yasaman Sharif, State Bar No. 298318
SHARIF | FAUST LAWYERS, LTD.
600 B Street, Suite 2490
San Diego, CA  92101
Telephone:   (619) 233-6600
Facsimile:    (619) 233-6602

Attorneys for Plaintiffs
Marcos Rodriguez and Jorge Rodriguez

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARCOS ANTONIO RODRIGUEZ, an individual, JORGE LUIS RODRIGUEZ, an individual<br><br>                    Plaintiffs,<br><br>          vs.<br><br>T-MOBILE USA, INC. a Delaware Corporation, COINBASE, INC., a Delaware Corporation, and DOES 1 through 20,<br><br>                    Defendants. | Case No.:  **'22CV581   BEN DEB**<br><br>CLRA DECLARATION OF PLAINTIFF MARCOS ANTONIO RODRIGUEZ PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d) |

I, Marcos Antonio Rodriguez, hereby declare as follows:

1.  I am a resident of California, over the age of eighteen years.  I am the Plaintiff in this action. I have personal knowledge of the facts herein and if called upon to testify I would and could do so competently.

2.  The Complaint in this lawsuit, filed concurrently with this declaration, is filed in the

proper place for trial under California Civil Code section 1780, subdivision (d). Defendants T-Mobile USA, Inc. and Coinbase, Inc. conduct substantial business within San Diego County. A substantial portion of the events and transactions alleged in the Complaint occurred within San Diego County.

I declare under the penalty of perjury under the laws of the State of California and United States of Aerica that the foregoing is true and correct.

Dated:                          By:   See Next Page for Electronic Signature
                                      Plaintiff Marcos Antonio Rodriguez

proper place for trial under California Civil Code section 1780, subdivision (d). Defendants T-Mobile USA, Inc. and Coinbase, Inc. conduct substantial business within San Diego County. A substantial portion of the events and transactions alleged in the Complaint occurred within San Diego County.

I declare under the penalty of perjury under the laws of the State of California and United States of Aerica that the foregoing is true and correct.

Dated: April 21st, 2022          By: _____
                                        Plaintiff Marcos Antonio Rodriguez