DAVIS WRIGHT TREMAINE LLP
  James H. Moon (SBN 268215)
  *jamesmoon@dwt.com*
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

DAVIS WRIGHT TREMAINE LLP
  Nicole Medeiros (SBN 318892)
  *nicolemedeiros@dwt.com*
505 Montgomery Street, 8th Floor
San Francisco, California 94111-6533
Telephone:  (415) 276-6500
Fax:  (415) 276-6599

*Attorneys for Defendant T-Mobile USA, Inc.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCOS ANTONIO RODRIGUEZ, an individual, JORGE LUIS RODRIGUEZ, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> T-MOBILE USA, INC., a Delaware Corporation, COINBASE, INC., a Delaware Corporation, and DOES 1 through 20, <br><br> Defendants. | Case No. 3:22-cv-00581-AJB-DEB <br><br> **DEFENDANT T-MOBILE USA, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [***Declarations of Christopher Muzio and James Moon Filed Concurrently***] <br><br> Date:      November 17, 2022 <br> Time:      2:00 p.m. <br> Dept.:     4A <br><br> Assigned to the Hon. Anthony J. Battaglia <br><br> Action Filed:  April 25, 2022 |

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 17, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 4A of the above-captioned Court located at 221 West Broadway, San Diego, CA 92101, Defendant T-Mobile USA, Inc. ("T-Mobile") will move the Court for an order compelling arbitration and staying this action filed by Plaintiffs Marcos Rodriguez and Jorge Rodriguez ("Plaintiffs").

This motion is made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., because Plaintiffs agreed to T-Mobile's Terms and Conditions ("T&Cs"), which include a mandatory arbitration provision encompassing this dispute. That provision requires the parties to resolve all disputes about T-Mobile's services, devices, and products in accordance with the rules of the American Arbitration Association ("AAA"), which delegates to the arbitrator any disputes over arbitrability. Plaintiffs' claims against T-Mobile are therefore subject to arbitration and any challenges to arbitrability should be decided by the arbitrator.

This motion relies on this notice, the attached Memorandum of Points and Authorities, the declarations of Christopher Muzio ("Muzio Decl.") and James Moon ("Moon Decl.") filed concurrently, the pleadings and records on file, and upon such other and further matters as may be presented before or at the hearing.

DATED: September 2, 2022

DAVIS WRIGHT TREMAINE LLP
James H. Moon
Nicole Medeiros

By: /s/ James H. Moon
      James H. Moon

*Attorneys for Defendant*
*T-Mobile USA, Inc.*

T-MOBILE'S MOTION TO COMPEL ARBITRATION
Case No. 3:22-cv-00581-AJB-DEB

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................. 1

II.     FACTUAL BACKGROUND........................................................ 2

     A.      Plaintiffs Use T-Mobile Services for Years. ........................................ 2

     B.      Plaintiffs Agree to Arbitrate Disputes with T-Mobile. ........................ 2

     C.      Plaintiffs Claim Third Parties Hacked Their Accounts........................ 5

III.    ARGUMENT ......................................................................... 6

     A.      The Federal Arbitration Act Liberally Favors Arbitration.................... 6

     B.      Plaintiffs Should Be Compelled to Arbitrate Under the FAA. ............ 7

          1.      Plaintiffs Assented to Arbitration. ............................................. 9

               a.      Plaintiffs Agreed to Arbitrate Disputes with T-Mobile. ........................................................... 10

               b.      Plaintiffs Are Also Required to Arbitrate Under Ordinary Contract and Agency Rules........................... 12

          2.      The Dispute Falls Within the Arbitration Provision. ............... 13

     C.      The Arbitrator Must Decide Any Arbitrability Challenge................ 14

     D.      This Case Should Be Stayed. ........................................................ 16

IV.     CONCLUSION........................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarez v. T-Mobile USA, Inc.*,
   2011 U.S. Dist. LEXIS 146757 (E.D. Cal. Dec. 21, 2011) .................................. 8

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ........................................................................... 6, 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ............................................................................. 7

*Baron v. Sprint Corp.*,
   2019 U.S. Dist. LEXIS 184435 (D. Md. Oct. 24, 2019) .................................. 13

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ................................................... 10

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ............................................................. 15

*Britton v. Co-op Banking Grp.*,
   4 F.3d 742 (9th Cir. 1993) .................................................................. 14

*C9 Ventures v. SVC-West, LP*,
   202 Cal. App. 4th 1483 (2012) ............................................................... 9

*Callahan v. Peopleconnect, Inc.*,
   2021 U.S. Dist. LEXIS 94467 (N.D. Cal. May 18, 2021), *aff'd*,
   2022 U.S. App. LEXIS 7121 (9th Cir. Mar. 18, 2022) ...................................... 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ............................................................ 7, 14

*Cohen v. TNP 2008 Participating Notes Program, LLC*,
   31 Cal. App. 5th 840 (2019) ............................................................... 12

*Comedy Club, Inc. v. Improv W. Assocs.*,
   553 F.3d 1277 (9th Cir. 2009) ............................................................... 7

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Comptroller of Treasury of Maryland v. Wynne*,
   575 U.S. 542 (2015) ................................................................................. 6

*Cordas v. Uber Techs., Inc.*,
   228 F. Supp. 3d 985 (N.D. Cal. 2017) .................................................. 15

*Crooks v. Wells Fargo Bank, N.A.*,
   312 F. Supp. 3d 932 (S.D. Cal. 2018) ........................................... 13, 15

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................. 7

*Destinations by Design, LLC v. T-Mobile USA, Inc.*,
   2010 U.S. Dist. LEXIS 48727 (S.D. Ohio Apr. 26, 2010) ................... 8

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ................................................................................. 9

*Gillmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ................................................................................... 7

*Goldberg v. Sweet*,
   488 U.S. 252 (1989) ................................................................................. 6

*Han v. Samsung Telecomms. Am. LLC*,
   2013 U.S. Dist. LEXIS 185022 (C.D. Cal. Dec. 16, 2013) ............ 9, 10

*Harris v. Halliburton Co.*,
   2016 U.S. Dist. LEXIS 74916 (E.D. Cal. June 8, 2016) ..................... 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ....................................................................... 15, 16

*Langere v. Verizon Wireless Servs., LLC*,
   2016 U.S. Dist. LEXIS 130678 (C.D. Cal. Sept. 23, 2016) ............... 10

*Leboeuf v. Nvidia Corp.*,
   833 F. App'x 465 (9th Cir. 2021) ........................................................ 15

*Letizia v. Prudential Bache Secs., Inc.*,
   802 F.2d 1185 (9th Cir. 1986) ......................................................... 9, 12

*Luafau v. Affiliated Computer Servs., Inc.*,
   2006 U.S. Dist. LEXIS 33048 (N.D. Cal. May 15, 2006) .................. 10

iii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*McGinnis v. T-Mobile USA, Inc.*,
   2009 U.S. Dist. LEXIS 121885 (W.D. Wash. Dec. 9, 2009) .............................. 8

*Meyer v. T-Mobile USA, Inc.*,
   836 F. Supp. 2d 994 (N.D. Cal. 2011) ........................................................... 8, 13

*Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.*,
   197 Cal. App. 4th 1146 (2011) ............................................................................ 9

*Mohammad v. T-Mobile USA, Inc.*,
   2018 U.S. Dist. LEXIS 202678 (E.D. Cal. Nov. 29, 2018) .................................. 8

*Montoya v. Comcast Corp.*,
   2016 U.S. Dist. LEXIS 130806 (E.D. Cal. Sept. 23, 2016) ........................... 9, 10

*Moore v. T-Mobile USA, Inc.*,
   2012 U.S. Dist. LEXIS 203946 (E.D.N.Y. Sept. 28, 2012), *aff'd*,
   548 F. App'x 686 (2d Cir. 2013) ..................................................................... 8, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .......................................................................................... 7, 13

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ........................................................................... 12

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................................. 9

*Operating Eng'rs Pension Tr. v. Cecil Backhoe Serv., Inc.*,
   795 F.2d 1501 (9th Cir. 1986) ........................................................................... 10

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ........................................................................... 15

*Owings v. T-Mobile USA, Inc.*,
   978 F. Supp. 2d 1215 (M.D. Fla. 2013) ............................................................... 8

*Ozormoor v. T-Mobile, USA, Inc.*,
   354 F. App'x 972 (6th Cir. 2009) ........................................................................ 8

*Preston v. Ferrer*,
   552 U.S. 346 (2008) ........................................................................................ 6, 7

*Republic of Nicaragua v. Standard Fruit Co.*,
   937 F.2d 469 (9th Cir. 1991) ........................................................................... 7, 13

iv

T-MOBILE'S MOTION TO COMPEL ARBITRATION
Case No. 3:22-cv-00581-AJB-DEB

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Schultz v. Verizon Wireless Servs., LLC,*
    833 F.3d 975 (8th Cir. 2016) ................................................................. 13

*Solis v. AT&T Mobility LLC,*
    2015 U.S. Dist. LEXIS 148697 (E.D. Mo. Nov. 3, 2015).................................. 13

*Specht v. Netscape Commc'ns Corp.,*
    306 F.3d 17 (2d Cir. 2002)................................................................. 10

*Tarbell v. Caliber Home Loans, Inc.,*
    2021 U.S. Dist. LEXIS 48386 (E.D. Cal. Mar. 15, 2021) .................................. 16

*United Steelworkers of Am. v. Am. Mfg. Co.,*
    363 U.S. 564 (1960) ........................................................................ 16

*Vogel v. Vogel,*
    2014 U.S. Dist. LEXIS 195049 (C.D. Cal. June 23, 2014) ................................ 13

*Westra v. Marcus & Millichap Real Est, Inv. Brokerage Co.,*
    129 Cal. App. 4th 759 (2005) ............................................................. 12

*Whaley v. T-Mobile, USA, Inc.,*
    2013 U.S. Dist. LEXIS 130245 (E.D. Ky. Sept. 12, 2013) ................................. 8

**Statutes**

9 U.S.C.
    § 1....................................................................................*passim*
    § 2....................................................................................... 6
    § 3.................................................................................... 7, 16
    § 4....................................................................................... 7

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Jorge Rodriguez and Marcos Rodriguez (collectively, "Plaintiffs") allege Defendants T-Mobile USA, Inc. ("T-Mobile") and Coinbase, Inc. ("Coinbase") failed to prevent criminals from hijacking their T-Mobile phone line and Coinbase cryptocurrency accounts.  (Compl., ECF No. 1, ¶¶ 58-68.)  There are many reasons why T-Mobile is not responsible for the criminal theft.  But the merits are not before the Court.  Plaintiffs' claims instead belong in arbitration pursuant to their agreements with T-Mobile.[1]

Plaintiffs are a father and son who share a T-Mobile account.  Since activating their T-Mobile service in 2018 and 2019, they have repeatedly consented to T-Mobile's industry-standard Terms and Conditions ("T&Cs").  The T&Cs broadly require arbitration of "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO" T-Mobile's services or devices.  (*See* Decl. of Chris Muzio ("Muzio Decl."), Ex. C at 20.)  Although T-Mobile's T&Cs give customers the right to opt out of arbitration, Plaintiffs never did.  (*Id.* ¶ 23.)  Instead, they continuously used T-Mobile's service and repeatedly agreed to abide by the T&Cs and its arbitration provision.  (*Id.*, Exs. A-O.)  Plaintiffs should be compelled to honor their agreements to arbitrate.

To the extent Plaintiffs dispute the scope or enforceability of the arbitration provision, that dispute goes to the arbitrator to decide, as the parties agreed.  But the arbitration agreement covers the claims Plaintiffs assert against T-Mobile based on its alleged failure to protect Plaintiffs' phone line from a criminal attack.  Those claims arise directly from T-Mobile's provision of phone services to Plaintiffs pursuant to T-Mobile's agreements, terms, and conditions.

---

[1] Coinbase informed T-Mobile that it will also file a separate motion to compel arbitration of this action pursuant to its user agreement.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The Court should compel Plaintiffs to arbitrate their claims against T-Mobile and stay this action pending completion of that arbitration.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs Use T-Mobile Services for Years.

Plaintiffs—a father and son—have used T-Mobile's services for years. Jorge (the father) alleges he has been a T-Mobile customer since 2018. (Compl. ¶¶ 25, 31.) T-Mobile's records confirm a T-Mobile account ending in -2604 ("the Rodriguez Account") was opened on May 6, 2018. (Muzio Decl. ¶ 3.) Marcos (the son) alleges he became a T-Mobile customer in April 2019 when his father opened a line of service for him on the Rodriguez Account. (Compl. ¶ 41 ("Marcos subscribed in or about April 2019, and became a subscriber [of T-Mobile] by having his father Jorge adding [sic] Marcos to the account that was under Jorge's name").) T-Mobile's records show that Jorge opened a line of service for Marcos as an authorized user in March 2019. (Muzio Decl. ¶ 4.) Both Marcos and Jorge "remained subscribers and continued using T-Mobile's services" through the filing of this action and at least until July 2022. (*Id.* ¶ 22; Compl. ¶ 44; *see also id.* ¶¶ 14, 16, 18, 34, 65, 69 (alleging use of T-Mobile service).)

### B.   Plaintiffs Agree to Arbitrate Disputes with T-Mobile.

Plaintiffs agreed to arbitrate their disputes with T-Mobile. For instance, on March 12, 2019, Plaintiffs entered into two separate agreements to purchase two new phones for use on the Rodriguez Account at a T-Mobile store in Santee, California. (Muzio Decl., Exs. G, H.) One agreement was to upgrade the phone associated with the then-existing line of service (Jorge's) and the other agreement was for a new phone associated with the new line of service activated at that time (Marcos's). (*See id.*) Both agreements prominently disclosed that "T-Mobile REQUIRES ARBITRATION OF DISPUTES unless for new customers YOU OPT OUT WITHIN 30 DAYS OF ACTIVATION, or for existing customers YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

CONDITIONS." (*Id.* at 151, 154.)  The agreements provided notice that the activation or use of T-Mobile's services or purchase of a device would constitute Plaintiffs' "agreement to T-Mobile's Terms and Conditions." (*Id.*)  The agreements also stated the T&Cs could be accessed at www.T-Mobile.com/terms-conditions. (Muzio Decl., Ex. G at 151, Ex. H at 154.)

T-Mobile's general T&Cs with its customers in effect on May 12, 2019, further detailed the arbitration agreement outlined in the May 12, 2019, transaction agreements:

> **\*Dispute Resolution and Arbitration.  YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS … WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.**

(Muzio Decl., Ex. C at 20.)  The T&Cs state that the parties' arbitration agreement is governed by the Federal Arbitration Act and that the arbitration will be governed by the American Arbitration Association's ("AAA") Consumer Arbitration Rules (*Id.*, Ex. C at 20-22.)  The T&Cs have not materially changed since Plaintiffs opened their T-Mobile account.  (*See id.*, Exs. C-F (versions of T&Cs).)

The T&Cs allowed Plaintiffs to opt out of arbitration:

> **YOU MAY CHOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN 30 DAYS</u> FROM THE EARLIER OF THE DATE YOU PURCHASED A DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE.**

(Muzio Decl., Ex. C at 21.)  Plaintiffs did not opt out of arbitration.  (*Id.* ¶ 23.)  To the contrary, Plaintiffs allege they continuously used T-Mobile's services since at

3
T-MOBILE'S MOTION TO COMPEL ARBITRATION
Case No. 3:22-cv-00581-AJB-DEB

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

least March 2019 through the alleged hack of their account in 2021.  (Compl. ¶¶ 31, 41, 44, 65, 69 ("Both Jorge and Marcos remained subscribers and continued using T-Mobile's services").)  T-Mobile's records confirm Plaintiffs continued to use and pay for T-Mobile service through the date of this lawsuit and at least through July 2022.  (Muzio Decl. ¶¶ 25-26.)

Plaintiffs repeatedly confirmed that the T&Cs would govern the Rodriguez Account by signing service agreements, transaction receipts, and Equipment Installment Plan ("EIP") contracts.  (Muzio Decl., Exs. A-B, G-O; *see also id.* ¶¶ 20-22 (explaining T-Mobile procedures for obtaining customer consent).)

The service agreements dated March 12, 2019, and January 21, 2021, included the following arbitration provision:

> **Disputes.   T-Mobile requires ARBITRATION OF DISPUTES UNLESS YOU OPT-OUT WITHIN 30 DAYS OF ACTIVATION.**   For details see www.T-Mobile.com/terms-conditions.

(Muzio Decl., Ex. A at 2, Ex. B at 4.)

The transaction receipts dated March 12, 2019, January 21, 2021, and August 10, 2021, included the following arbitration agreement:

> Disputes.   T-Mobile REQUIRES ARBITRATION OF DISPUTES unless for new customers YOU OPT OUT WITHIN 30 DAYS OF ACTIVATION, or for existing customers YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS.   For details see T-Mobile's Terms and Conditions at www.T-Mobile.com/terms-conditions.

(Muzio Decl., Ex. G at 151, Ex. H at 154, Ex. I at 156, Ex. J at 158; *see also* Compl. ¶ 64.)

The EIP contracts dated March 12, 2019, April 10, 2019, January 21, 2021, and August 10, 2021, each included an excerpt of the Dispute Resolution and Arbitration section from T-Mobile's T&Cs:

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

This section describes how any disputes between you and T-Mobile will be resolved.  WE AND YOU EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.  This includes any claims against others relating to services or equipment provided or billed to you (such as our suppliers, dealers or vendors) when you also assert claims against us in the same proceeding.  This agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the choice of law provision below).  THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED.  THE ARBITRATOR MAY AWARD ON AN INDIVIDUAL BASIS THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

(Muzio Decl., Exs. L at 165, Ex. M at 175, Ex. N at 185, Ex. O at 195.)  The agreements go on to describe the opt-out procedures and other dispute resolution logistics.  (*Id.*)

Each agreement incorporated or referred specifically to T-Mobile's T&Cs. (Muzio Decl., Ex. A at 2, Ex. B at 4, Ex. G at 151, Ex. H at 154, Ex. I at 156, Ex. J at 158, Ex. G at 151, Ex. H at 154, Ex. I at 156, Ex. J at 158.)

**C.      Plaintiffs Claim Third Parties Hacked Their Accounts.**

Despite the arbitration requirement, Plaintiffs initiated this lawsuit against T-Mobile and Coinbase on April 25, 2022.  Each of Plaintiffs' claims against T-Mobile arises from a purportedly unauthorized "SIM card swap,"[2] which

---

[2] A Subscriber Identity Module ("SIM") card is a small card inserted into a cell phone that stores data for cellular telephone subscribers and allows a network,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   allegedly allowed third-party hackers to take control of Plaintiffs' T-Mobile service

2   in November 2021.  (Compl. ¶¶ 63-64.)  Following the SIM swap, Plaintiffs claim

3   the hackers leveraged access to their T-Mobile service to steal nearly $188,345

4   from their Coinbase account.  (*Id*. ¶ 64.)  Plaintiffs seek to recover the value of the

5   cryptocurrencies that they allegedly lost based on the hack plus fees charged by

6   Coinbase.  (*Id*. ¶ 159.)

7   **III.   ARGUMENT**

8        **A.     The Federal Arbitration Act Liberally Favors Arbitration.**

9        The Federal Arbitration Act ("FAA") applies to T-Mobile's T&Cs because a

10  contract for telecommunications services affects interstate commerce.  *See* 9 U.S.C.

11  §§ 1-2; *Goldberg v. Sweet*, 488 U.S. 252, 254-55 (1989), *abrogation on other*

12  *grounds by Comptroller of Treasury of Maryland v. Wynne,* 575 U.S. 542, 555

13  (2015) (telecommunications industry involves interstate commerce).  The T&Cs'

14  choice of law provision also states that the FAA governs the agreement (Muzio

15  Decl., Ex. C at 24).  *See Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (applying

16  FAA's procedural rules pursuant to choice-of-law clause).

17       Under the FAA, agreements to arbitrate "shall be valid, irrevocable, and

18  enforceable, save upon such grounds as exist at law or in equity for the revocation

19  of any contract."  9 U.S.C. § 2.  "The 'principal purpose' of the FAA is to 'ensur[e]

20  that private arbitration agreements are enforced according to their terms.'"  *AT&T*

21  *Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011) (citation omitted).  Congress

22  passed the FAA to "reverse the longstanding judicial hostility to arbitration

23  agreements" and "to place arbitration agreements upon the same footing as other

24  _____

25  like T-Mobile's, to link a particular physical device to a particular phone number on

26  the network.  A device that relies on a physical SIM card can operate on T-Mobile's

27  network only if a specific line of service is actively linked to a SIM card in that

28  particular mobile device.

T-MOBILE'S MOTION TO COMPEL ARBITRATION
Case No. 3:22-cv-00581-AJB-DEB

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

contracts." *Gillmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  The FAA thus "embod[ies] [a] national policy favoring arbitration" "notwithstanding any state … policies to the contrary." *Concepcion*, 563 U.S. at 346.

To further the FAA's purposes, the Supreme Court has emphasized that courts should interpret arbitration clauses liberally in favor of arbitration.  "It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'" *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983).  The Supreme Court has instructed that courts should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Preston*, 552 U.S. at 357 (citation omitted).  Even "the most minimal indication of the parties' intent to arbitrate must be given full effect." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).

**B.     Plaintiffs Should Be Compelled to Arbitrate Under the FAA.**

In considering a motion to compel arbitration, "[t]he court's role under the [FAA] is … limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  When both elements exist, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (citing 9 U.S.C. §§ 2, 4).  As explained below, both conditions are satisfied and the

Court should direct Plaintiffs to arbitrate their claims against T-Mobile through AAA arbitration.[3]

_____

[3] Courts routinely enforce T-Mobile's arbitration agreement with its customers. *See, e.g.*, *Moore v. T-Mobile USA, Inc.*, 2012 U.S. Dist. LEXIS 203946, at *17-20 (E.D.N.Y. Sept. 28, 2012), *aff'd,* 548 F. App'x 686, 686–87 (2d Cir. 2013) (affirming court's decision to enforce T-Mobile's arbitration provision); *Ozormoor v. T-Mobile, USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (holding T-Mobile's arbitration clause was not unconscionable and compelling arbitration of plaintiff's claim); *Mohammad v. T-Mobile USA, Inc.*, 2018 U.S. Dist. LEXIS 202678, at *15-17 (E.D. Cal. Nov. 29, 2018) (finding arbitration clause not procedurally or substantively unconscionable; enforcing arbitration in SIM-swap case); *Meyer v. T-Mobile USA, Inc.*, 836 F. Supp. 2d 994, 1003 (N.D. Cal. 2011) ("the arbitration agreement is not procedurally unconscionable"); *Alvarez v. T-Mobile USA, Inc.*, 2011 U.S. Dist. LEXIS 146757, at *20 (E.D. Cal. Dec. 21, 2011) (finding T-Mobile's arbitration agreement was not procedurally unconscionable); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1225 (M.D. Fla. 2013) ("Not only does the Service Agreement incorporate T-Mobile's Terms & Conditions of service, which include a detailed arbitration provision, the Service Agreement itself put Plaintiff on notice that arbitration of any disputes involving T-Mobile was mandatory if Plaintiff did not timely opt-out."); *McGinnis v. T-Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 121885, at *21-22 (W.D. Wash. Dec. 9, 2009) (holding T-Mobile's mandatory arbitration provision valid and enforceable); *Destinations by Design, LLC v. T-Mobile USA, Inc.*, 2010 U.S. Dist. LEXIS 48727, at *19-20 (S.D. Ohio Apr. 26, 2010) (granting T-Mobile's motion to stay litigation and compel arbitration as to all of plaintiff's claims); *Whaley v. T-Mobile, USA, Inc.*, 2013 U.S. Dist. LEXIS 130245, at *2 (E.D. Ky. Sept. 12, 2013) (compelling arbitration).

### 1.     Plaintiffs Assented to Arbitration.

In determining whether the parties have agreed to arbitrate, the Court should "apply ordinary state-law principles that govern the formation of contracts." *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  In particular, "the district court looks to 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration.'" *Montoya v. Comcast Corp*., 2016 U.S. Dist. LEXIS 130806, at *7-8 (E.D. Cal. Sept. 23, 2016).  Here, the T&Cs provide for application of "laws of the state or jurisdiction in which your billing address in our records is located." (Muzio Decl., Ex. C at 24.)  *See Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014) ("[u]nder California law, the parties' choice of law will govern unless section 187(2) of the [Restatement] dictates a different result").  California law governs here because Plaintiffs lived in California at all relevant times.  (Muzio Decl. ¶ 24; Compl. ¶¶ 1-2, Exs. A-B ¶ 1.)

California state-law principles of contract formation, which "adhere to the objective theory of contract law," govern the determination of the existence of a valid agreement to arbitrate.  *Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.,* 197 Cal. App. 4th 1146, 1154 (2011).  A contract "may be made 'in any manner sufficient to show an agreement, including conduct by both parties which recognizes the existence of such a contract.'"  *Han v. Samsung Telecomms. Am. LLC*, 2013 U.S. Dist. LEXIS 185022, at *8 (C.D. Cal. Dec. 16, 2013) (citing *C9 Ventures v. SVC-West, LP*, 202 Cal. App. 4th 1483, 1492 (2012)).  Even absent an express agreement, individuals may also be required to arbitrate based on ordinary state-law contract and agency principles.  *See Letizia v. Prudential Bache Secs., Inc.,* 802 F.2d 1185, 1188 (9th Cir. 1986).  Plaintiffs are required to arbitrate for either reason.

### a.   Plaintiffs Agreed to Arbitrate Disputes with T-Mobile.

Under California law, parties are bound to their agreements whether they read them or not. *See Montoya*, 2016 U.S. Dist. LEXIS 130806, at *14 ("[w]hether or not the Plaintiffs actually read the services contract or arbitration agreement is irrelevant").  The law assumes a party has read the contract she accepts; a party cannot avoid obligations by failing to read the agreement. *See Operating Eng'rs Pension Tr. v. Cecil Backhoe Serv., Inc.*, 795 F.2d 1501, 1505 (9th Cir. 1986); *Luafau v. Affiliated Computer Servs., Inc.*, 2006 U.S. Dist. LEXIS 33048, at *8 (N.D. Cal. May 15, 2006).

A company need not negotiate its standard terms and conditions with each consumer before initiating service—that is impractical.  *See, e.g.*, *Han*, 2013 U.S. Dist. LEXIS 185022, at *16-17 (finding that "Plaintiffs' receipt of the Standard Limited Warranty and failure to opt out of the dispute resolution procedure therein constitutes valid acceptance of those terms").  Even the mere "receipt of a physical document containing contract terms or notice thereof is frequently deemed, in the world of *paper* transactions, a sufficient circumstance to place the offeree on inquiry notice of those terms." *Id.* (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 31 (2d Cir. 2002)).

"[T]he economic and practical considerations involved in selling services to mass consumers . . . make it acceptable for terms and conditions to follow the initial transaction." *Langere v. Verizon Wireless Servs., LLC*, 2016 U.S. Dist. LEXIS 130678, at *16 (C.D. Cal. Sept. 23, 2016) (citing *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1105 (C.D. Cal. 2002)).  It is enough that the recipient had the opportunity to review the terms and conditions. *Id.* at *15-16 (upholding arbitration agreement where "Plaintiff signed an electronic receipt that alerted him to the existence of the Customer Agreement and additional terms, including the settlement of disputes by arbitration.").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, T-Mobile's records show that Plaintiffs repeatedly confirmed that the T&Cs would govern the Rodriguez Account by signing service agreements, transaction receipts, and EIP contracts.  (Muzio Decl., Exs. A-B, G-O.)  For instance, on March 12, 2019, Plaintiffs signed separate agreements to purchase two new Apple iPhones for use on the Rodriguez Account.  (*Id.*, Exs. G, H.)  One agreement was to upgrade an existing service (Jorge) and one agreement was to activate a new service (Marcos).  (*See id.*)  Like their other signed agreements, the March 12, 2019, agreements disclosed that "T-Mobile requires ARBITRATION OF DISPUTES unless for new customers YOU OPT OUT WITHIN 30 DAYS OF ACTIVATION, or for existing customers YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS."  (*Id.*)  Plaintiffs never opted out despite the opportunity.  (*Id.* ¶ 23.)  Instead, they continued to use and pay for T-Mobile's devices and services and sign additional arbitration agreements.  (*Id.* ¶ 25; Compl. ¶ 44.)

Plaintiffs also continuously and repeatedly assented to arbitrate disputes with T-Mobile according to its standard T&Cs by continuing their years-long relationship.  The T&Cs in effect at the time of Plaintiffs' account activation (and the versions thereafter) state that users accept the T&Cs by "activating, using or paying for the Service or a Device; or opening the Device box."  (Muzio Decl., Ex. C at 7.)  Plaintiffs accepted the arbitration agreements in the T&Cs by activating and continuously using T-Mobile devices and services.  (Muzio Decl. ¶¶ 3, 4, 25.)  Plaintiffs do not dispute that they started to use their T-Mobile service in May 2018 (when Jorge opened the Rodriguez Account) and March 2019 (when Marcos was added as an authorized user).  (Compl. ¶¶ 16, 18, 31, 41, 44, 65, 69.)  Plaintiffs also agreed to be bound by the T&Cs by making regular monthly payments for their T-Mobile line of service since May 2018.  (*Id.* ¶ 23.)  And they agreed again when they opened their new device boxes to use those devices on T-Mobile's network.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

At each step, through their contracts and conduct, Plaintiffs agreed to abide by the T&Cs, which governed T-Mobile's relationship to Plaintiffs and required arbitration of disputes with T-Mobile.

### b.    Plaintiffs Are Also Required to Arbitrate Under Ordinary Contract and Agency Rules.

Under California law, Plaintiffs are independently bound to arbitrate even absent their express assent (evidence of which exists in abundance in this case, as outlined above) based on (a) equitable estoppel, (b) agency, and (c) third-party beneficiary principles.  *See Letizia,* 802 F.2d at 1188.  Courts apply these principles even without a showing of a bilateral agreement as "an outgrowth of the strong federal policy favoring arbitration."  *Id.*

For one, "[e]quitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1045 (9th Cir. 2009) (quotations omitted).  Plaintiffs' claims against T-Mobile are based exclusively on T-Mobile's provision of phone services to Plaintiffs pursuant to its T&Cs. Plaintiffs cannot obtain the benefits of their service agreements while avoiding their arbitration obligations based on the same contract.

Plaintiffs are also each bound to the T&Cs based on standard agency principles.  *See Callahan v. Peopleconnect, Inc.*, 2021 U.S. Dist. LEXIS 94467, at *10-11 (N.D. Cal. May 18, 2021), *aff'd,* 2022 U.S. App. LEXIS 7121 (9th Cir. Mar. 18, 2022) ("A nonsignatory-principal can be compelled to arbitrate based on the agreement to arbitrate made by a signatory-agent"); *Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal. App. 5th 840, 866 (2019); *Westra v. Marcus & Millichap Real Est, Inv. Brokerage Co.,* 129 Cal. App. 4th 759, 766 (2005) ("a 'preexisting relationship' between a signatory party and another person or entity will allow enforcement of an arbitration agreement as to the nonsignatory") (citation omitted).  For instance, Marcos concedes he became a

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

customer of T-Mobile "by having his father Jorge add[ ] Marcos to the account that was under Jorge's name." (Compl. ¶ 41.) He is bound by Jorge's actions on his behalf in securing the T-Mobile line of service at issue in this case, which is governed by the T&Cs.

Last, Marcos is bound to the T&Cs as an intended beneficiary of Jorge's agreements with T-Mobile as an authorized account user, as courts have held in similar circumstances. *See Solis v. AT&T Mobility LLC*, 2015 U.S. Dist. LEXIS 148697, at *4 (E.D. Mo. Nov. 3, 2015) (user on a cellular telephone plan was a third-party beneficiary because the "service contracts obligated AT&T to provide wireless service to that [user's] line"); *Schultz v. Verizon Wireless Servs., LLC*, 833 F.3d 975, 980 (8th Cir. 2016) (affirming order compelling arbitration of claims of authorized user); *Baron v. Sprint Corp.*, 2019 U.S. Dist. LEXIS 184435, at *10 (D. Md. Oct. 24, 2019) (binding authorized users to service contracts); *see also Vogel v. Vogel,* 2014 U.S. Dist. LEXIS 195049, at *7-8 (C.D. Cal. June 23, 2014) (granting motion to compel where nonsignatory had financial interest in agreement).

Plaintiffs should be held to the arbitration requirement in T-Mobile's T&Cs and their service agreements with T-Mobile.

## 2. The Dispute Falls Within the Arbitration Provision.

The FAA reflects a "liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms." *Republic of Nicaragua*, 937 F.2d at 475. To rebut this presumption, the party resisting arbitration must show the agreement does not encompass the claims at issue. *Meyer v. T-Mobile USA,* 836 F. Supp. 2d at 1000.

To determine whether an arbitration agreement encompasses claims, courts look to the plain language of the agreement. *See Crooks v. Wells Fargo Bank, N.A.,*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

312 F. Supp. 3d 932, 937 (S.D. Cal. 2018).  "In the absence of any express provision excluding a particular grievance from arbitration … only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Harris v. Halliburton Co.*, 2016 U.S. Dist. LEXIS 74916, at *16 (E.D. Cal. June 8, 2016) (citation omitted).  In particular, the Ninth Circuit recognizes arbitration clauses encompassing "[a]ny dispute, controversy, or claim" reach "broad and far" in scope, *Chiron*, 207 F.3d at 1131, and parties "routinely use[]" such clauses "to secure the broadest possible arbitration coverage."  *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993).

The arbitration provision in the T&Cs broadly encompasses "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS WILL BE RESOLVED BY BINDING ARBITRATION."  (Muzio Decl., Ex. C at 20.)  Plaintiffs' claims rest on T-Mobile's alleged failure to safeguard their T-Mobile line of service from unauthorized access by third-party fraudsters.  (Compl. ¶¶ 63-64.)  These claims arise directly from T-Mobile's services, privacy policy, and products.  The arbitration clause thus covers all of Plaintiffs' claims.  *See, e.g., Moore v. T-Mobile USA,* 2012 U.S. Dist. LEXIS 203946, at *20-21 (finding T-Mobile's broad arbitration clause encompassed claims, including statutory claims, arising from a service agreement).

**C.     The Arbitrator Must Decide Any Arbitrability Challenge.**

Because a valid agreement to arbitrate binds Plaintiffs and encompasses the present dispute, the Court should grant this Motion.  *See Chiron Corp.,* 207 F.3d at 1131-32.  To the extent Plaintiffs challenge the scope or enforceability of the arbitration provision, the arbitrator must decide those issues.

As the Ninth Circuit recognizes, "gateway issues"—over the validity and enforceability of arbitration provisions—"can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* [delegate arbitrability to an

T-MOBILE'S MOTION TO COMPEL ARBITRATION
Case No. 3:22-cv-00581-AJB-DEB

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

arbitrator].'"  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted).  The Ninth Circuit has held that "incorporation of the [AAA] rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  *Id.* (citation omitted).  Therefore, district courts consistently hold that where a consumer arbitration provision incorporates AAA rules, the arbitrator and not the courts must decide the threshold issue of arbitrability.  *See, e.g.*, *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 991 (N.D. Cal. 2017) (granting motion to compel arbitration because arbitration agreement's incorporation of AAA rules "shows the parties' clear and unmistakable intent to delegate arbitrability questions to an arbitrator"); *Crooks*, 312 F. Supp. 3d at 937 (same).

Every version of T-Mobile's service agreements and T&Cs in place since Plaintiffs became customers incorporate the AAA's rules.  (*See, e.g.*, Muzio Decl. Ex. C at 21, Ex. D at 58, Ex. E at 82, Ex. F at 119.)  The AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim."  (Decl. of James Moon ("Moon Decl."), Ex. A (AAA Consumer Rules) at 18, § R-14(a); *id.*, Ex. B (AAA Commercial Rules) R-7(a).)

Because the parties delegated arbitrability issues to the arbitrator under AAA rules, the Court must compel arbitration and allow the arbitrator to resolve any purported issues of arbitrability or enforceability.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("if a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue"); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013); *see also Leboeuf v. Nvidia Corp.*, 833 F. App'x 465, 467 (9th Cir. 2021) ("the Supreme Court requires enforcement of [delegation] clauses").

Indeed, the United States Supreme Court has held, in no uncertain terms, that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator" in a delegation clause, as here, "a court may not override the contract. . . . That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless. That conclusion follows . . . from [this Court's] precedent." *Henry Schein, Inc.*, *supra*, 139 S. Ct. at 529; *see, e.g., United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960) ("Arbitration should have been ordered" where an "agreement . . . submit[ted] all grievances to arbitration, not merely those which the court will deem meritorious.")

Because the parties delegated arbitrability issues to the arbitrator pursuant to AAA rules, the Court should compel arbitration and allow the arbitrator to resolve any purported issues of arbitrability. *See Schein*, 139 S. Ct. at 529.

## D.     This Case Should Be Stayed.

The FAA provides that, once satisfied that the suit should be moved into arbitration, a court "shall on application of one of the parties stay the trial of the action." 9 U.S.C. § 3. As a result, when a plaintiff asserts claims within the scope of an enforceable arbitration agreement, as Plaintiffs' claims are here, the court should stay the action pending arbitration. Indeed, even if the Court determines only part of the action should be compelled to arbitration or grants only one Defendants' motions to compel arbitration, the Court should stay any remaining claims pending arbitration given the factual overlap between the claims and parties. *See, e.g.*, *Tarbell v. Caliber Home Loans, Inc.,* 2021 U.S. Dist. LEXIS 48386, at *8-9 (E.D. Cal. Mar. 15, 2021).

16

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## IV.    CONCLUSION

T-Mobile respectfully requests that the Court: (a) compel Plaintiffs to arbitrate their claims against T-Mobile, and (b) stay this action pending the outcome of arbitration.

DATED: September 2, 2022                    DAVIS WRIGHT TREMAINE LLP
                                            James H. Moon
                                            Nicole Medeiros

                                            By: /s/ James H. Moon
                                                James H. Moon

                                            *Attorneys for Defendant*
                                            *T-Mobile USA, Inc.*

17

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899