UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCOS ANTONIO RODRIGUEZ, an individual, JORGE LUIS RODRIGUEZ, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>T-MOBILE USA, INC. a Delaware Corporation, COINBASE, INC., a Delaware Corporation, and DOES 1 through 20,<br><br>Defendants. | Case No.: 22-cv-00581-AJB-DEB<br><br>**ORDER GRANTING DEFENDANT T-MOBILE USA, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>**(Doc. No. 26)** |

Before the Court is Defendant T-Mobile USA, Inc.'s ("T-Mobile") motion to compel arbitration. (Doc. No. 26.) Plaintiffs Marcos Antonio Rodriguez ("Marcos") and Jorge Luis Rodriguez ("Jorge") (collectively, "Plaintiffs") filed an opposition, to which T-Mobile replied. (Doc. Nos. 38, 40.) For the reasons set forth below, the Court **GRANTS** T-Mobile's motion.

## I. BACKGROUND

Plaintiffs Jorge and Marcos (father and son, respectively) are customers of T-Mobile, a wireless service provider. Jorge opened a T-Mobile account in May 2018 and opened a line of service for Marcos in March 2019. Marcos and his father, Jorge, are also investors who own multiple businesses. In April 2021, Marcos opened a cryptocurrency account with Coinbase, Inc. ("Coinbase"), one of the largest online cryptocurrency exchange platforms for buying, selling, transferring, and storing cryptocurrency.

On April 25, 2022, Plaintiffs filed a Complaint against T-Mobile and Coinbase, stemming from an alleged "failure to provide the proper services advertised to, and to protect the privacy and sensitive confidential data of, their customers, Plaintiffs." (Doc. No. 1, Compl. at ¶ 13.) As relevant, Plaintiffs allege that because of T-Mobile's "false and/or misleading sales and marketing materials and its failure to abide by its promises and representations to safeguard its customers' confidential personal and proprietary information," Plaintiffs' personal information was compromised during T-Mobile's data breach in August 2021. (*Id.* at ¶ 14.) Plaintiffs also allege that because of T-Mobile's failures and misrepresentations about safeguarding their customers' information, "an unauthorized SIM swap was conducted on Marcos' mobile device in November 2021," allowing hackers to access and obtain his cell phone number and accounts, his Coinbase account. (*Id.*)

In response to the Complaint, T-Mobile filed the instant motion to compel arbitration. (Doc. No. 26.) This Order follows.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). Under the FAA, the court must, as a general matter, determine "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan,* 796 F.3d at 1130. These gateway issues, however, "can be expressly delegated to the arbitrator where 'the parties *clearly and*

2

*unmistakably* provide otherwise."' *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). In determining whether a valid agreement exists, district courts apply applicable state law principles of contract formation. *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Under California law,[1] "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

## III. DISCUSSION

T-Mobile contends that on March 12, 2019, while signing a service agreement, Plaintiffs agreed to T-Mobile's Terms and Conditions, which contains an arbitration provision. (*Id.* at 9–10.)[2] Plaintiffs do not meaningfully dispute that they consented to the arbitration agreement.[3] Instead, Plaintiffs argue that the agreement does not cover their

---

[1] There is no dispute that California contract law applies.

[2] The pinpoint page citations herein refer to the ECF-generated page numbers at the top of each filing.

[3] Plaintiffs merely argue that they "do not recall receiving or reviewing any arbitration agreement." (Doc. No. 38 at 11.) The argument is unavailing. "A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001).

dispute and contains an invalid and unconscionable delegation clause. (Doc. No. 38 at 9, 14.) Because the scope and validity of an arbitration agreement are gateway issues that can be delegated to the arbitrator, the Court considers, as a threshold matter, whether there is "clear and unmistakable" evidence that the parties intended to delegate the arbitrability question to an arbitrator.

### A.    Clear and Unmistakable Delegation to the Arbitrator

Here, the parties' arbitration agreement states: "The arbitration of all disputes will be administered by the American Arbitration Association ('AAA') under its Consumer Arbitration Rules". (Doc. No. 26-1 at 28–29, 65, 89, 126.) One of the AAA rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Doc. No. 26-2 at 21, 66.)

Notably, the Ninth Circuit held in *Brennan* that the "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability," where one of the AAA rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." 796 F.3d at 1130. These very circumstances obtain here—the parties' arbitration agreement incorporates these same AAA rules. *Brennan* is thus controlling. As such, the Court finds the incorporation of the AAA rules in the arbitration agreement here constitutes "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability.

In an attempt to distinguish *Brennan*, Plaintiffs argue they are not sophisticated parties. The argument is unavailing. Plaintiffs "are investors who own multiple businesses." (Doc. No. 1 at ¶ 46.) The Court is thus unpersuaded that they lack sophistication to understand contracts.

Even if the plaintiffs were unsophisticated, the *Brennan* court expressly stated that that its holding "does not foreclose the possibility that this rule could also apply to

unsophisticated parties or to consumer contracts." *Brennan*, 796 F.3d at 1130. Indeed, the court went out of its way to explain:

> Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be "commercial" before a court may conclude that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of the parties' intent.

*Id.*

For the foregoing reasons, the Court rejects Plaintiffs' lack of sophistication argument. Accordingly, applying *Brennan*, the Court finds that the parties' arbitration agreement delegates issues of arbitrability to the arbitrator.

### B.    Unconscionability of the Delegation Provision

Having found that the parties' agreement, clearly and unmistakably delegates arbitrability questions to the arbitrator, the Court considers Plaintiffs' challenge to the delegation clause as unconscionable. To successfully challenge a delegation clause, a party must challenge the specific language delegating the arbitrability question to an arbitrator, rather than the entire arbitration agreement. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). "When considering an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Rent–A–Center,* 561 U.S. at 73 (2010)). To establish unconscionability, the party opposing enforcement of the contract must demonstrate procedural and substantive unconscionability, although both need not be present in the same degree. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021). Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

#### 1.    Procedural Unconscionability

The procedural unconscionability prong focuses on "oppression or surprise due to unequal bargaining power," which often results in "no real negotiation and an absence of

meaningful choice." *Id.* Plaintiffs have not established that the delegation clause involved undue oppression or surprise. There is no oppression present here because although the contact is one of adhesion, the arbitration agreement clearly provided Plaintiffs with an option to opt-out of arbitration, and there is no indication that Plaintiffs lacked reasonable market alternatives such that there was an absence of meaning choice. *See Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005) ("[T]he 'oppression' factor . . . may be defeated, if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable.").

The Court also does not find surprise present here. The service agreements signed by Plaintiffs clearly disclosed that T-Mobile requires arbitration of disputes and notified them of the opportunity to opt-out. The service agreements also referred Plaintiffs to the Terms and Conditions, which features the arbitration agreement in a section titled "Dispute Resolution." The title is bolded and larger than the rest of the text, readily distinguishing it from the rest of the document. The section details the arbitration agreement and explains that arbitrations of all disputes will be governed by the AAA rules and includes a link to the AAA rules. Moreover, Plaintiffs' argument that the delegation provision is buried within the AAA rules is unconvincing. The AAA rules are available on the website provided in the arbitration agreement and is presented with table of contents, topically organized with easy-to-read headings and subheadings about the AAA's rules and processes. The Court notes Plaintiffs are investors and businessowners—not unsophisticated individuals who would be surprised by standard business documents and practices.

Accordingly, there being no oppression or surprise, the Court finds the degree of procedural conscionability based on the adhesive nature of the contract is negligible. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015) ("[T]he adhesive nature of" an arbitration agreement "is sufficient to establish some degree of procedural unconscionability.").

### 2. Substantive Unconscionability

Because the Court found a low degree of procedural unconscionability, Plaintiffs must demonstrate the delegation clause is overwhelmingly substantively unconscionable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) ("The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."). They have not done so.

Plaintiffs' substantive unconscionability challenge is based on the "arbitration provision containing a one-sided lengthy informal resolution process, whereby the customer is required to contact T-Mobile and to allow it to have 60 days from the receipt of the complaint to resolve the issue." (Doc. No. 38 at 25.) This challenge, however, is not specific to the delegation provision—it applies to the arbitration agreement as a whole. Accordingly, the Court need not and will not consider this argument. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) ("When considering an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision.'"); *accord Rent–A–Center,* 561 U.S. at 73 ("[W]e need not consider that claim because none of [the plaintiff's] substantive unconscionability challenges was specific to the delegation provision.").

Consequently, Plaintiffs have failed to establish substantive unconscionability, and in turn, failed to demonstrate that the delegation clause is unconscionable. *See Lim*, 8 F.4th at 1000; *Armendariz*, 24 Cal. 4th at 114.

//
//
//
//
//
//
//

## IV. CONCLUSION

Accordingly, for the reasons stated herein, T-Mobile's motion to compel arbitration is **GRANTED**. (Doc. No. 26.) Pursuant to 9 U.S.C. § 3, the action between Plaintiff and T-Mobile is **STAYED** pending arbitration. No later than October 31, 2023, the parties must file a Joint Status Report as to the anticipated schedule for the arbitration. Every 60 days thereafter, the parties must file an updated Joint Report on the status of the arbitration.

**IT IS SO ORDERED**.

Dated:  September 28, 2023

Hon. Anthony J. Battaglia
United States District Judge